Moncure, J.
The first question arising in this case is, Did the Circuit court err in instructing the jury that a bargainee, under a deed from a bargainor who was out of possession, and against whom adverse possession was held, may, under the new Code, maintain ejectment in his own name?
It is very clear that before the Code took effect, a bargainee of a party not in possession, actual or constructive, at the time of the execution of the deed, could not maintain ejectment in his own name, at least against the party at that time in the adverse possession of the land. His disability to maintain the action proceeded, not from the act against conveying or taking pretensed titles, 1 Rev. Code 375, but from the common law, whose maxim it was that nothing in action or entry could be granted over. A feoffment was void without livery of seisin ; and without possession there could be no livery of seisin. 4 Kent Com. 448; 2 Lorn. Dig. 8, 9. The statute of uses, 1 Rev. Code 370, § 29, did not remove the disability, because it only operated on a possession existing in the bargainor at the time of the execution of the deed, and transferred that possession to the use created or declared in favor of the bargainee. If no possession existed in the bargainor, of course none could be transferred to the bargainee. But the Code has changed the common law rule by *600 declaring that “ any interest in or claim to real estate may be disposed of by deed or will.” Ch. 116, § 5, 500. That such a change was contemplated by the revjsorSj js manifest from their report, p. 602, § 5, and note.‡ They recommended the adoption of a section similar to 8 and 9 Viet. ch. 106, § 6; in which “aright of entry” is expressly named. Instead of adopting that section, which is complicated in its details, the legislature enacted the provision before quoted. Their object was to use brief and plain terms, which would be at least as extensive in their meaning as the terms used in the statute of Victoria. They could not have used more comprehensive terms than they did. A right of entry is certainly “ an interest in or claim to real estate,” and may therefore “ be disposed of by deed or will.” If it may be so disposed of, the grantee or devisee may bring the action in his own name. The right of action is incident to the right of entry, and comes along with it to the grantee or devisee : otherwise it would exist nowhere; for it cannot remain in the grantor or devisor, who has disposed of the right of entry, and has no longer any interest in or claim to the land which can give him any right of action. There can be no right without a remedy, nor a remedy without a right. These views are strongly sustained by the case of Taylor's devisees v. Rightmire, 8 Leigh 468, and the opinions of Carr, J. and Tucker, P. therein. It was held in that case that a writ of right may be maintained by a devisee upon the seisin of his testator, under the statute of wills, 1 Eev. Code, ch. 104, § 1, p. 375. The terms of that statute are certainly not stronger in favor of the right of action in the devisee, than the terms of the provision of the new Code, before referred to. I am therefore of opinion that the court did not err in giving the instruction in question.
The second question is, Did the court err in in *601 structing the jury that the deed from John and S. G-. Adams, as executors of Richard Adams, was at law, on its face, a sufficient execution of the powers of sale and conveyance conferred upon them by the will of their testator ?
The question was much discussed in the argument of this case, Whether the power conferred on the executors by the will was a naked power, or a power coupled with an interest ? In other words, Whether or not the executors were invested with a legal title to the estate? But in my view of the case, it is unnecessary to decide that question. It is true, that if trustees invested with the legal title to an estate convey it to another in plain violation of the trust, and even by a deed which on its face shows such violation, the title of the grantee is good at law, and resort must be had to a court of equity to set aside the deed. But it is also, I apprehend, equally true, that if the donee of a power make a sale and conveyance in pursuance of the power, the title of his grantee will be as good at law as if he had been invested with the legal title. The donor of the power being clothed with the legal title, and having empowered another to pass it from him in a certain way, the execution of the power in that way, as effectually invests the appointee with the title, as if it had been directly conveyed to him by the donor. The appointee takes the estate under the donor, and not under the appointor, who is a mere ministerial agent in passing the title. Thus we see the difference, and so far as concerns the present question the only difference, between the two cases of a conveyance by a trustee invested with a legal title, and a conveyance by a donee of a power conferred on him by the owner of the estate conveyed. In the former case, the trustee may pass the legal title as any other owner may. In the latter, the donee of the power can pass it only in the prescribed *602 mode. But having passed it in that mode, he places graiAee on the same impregnable ground af law, is occupied by a grantee in the former case. jQ case, the title, though impregnable at law, is assailable in equity; and on the same or similar grounds : As where the trustee or appointor has committed a breach of trust or fraud in the execution of the trust or power, in which the grantee participated; or of which he had notice; or for which he may be otherwise responsible. An illusory appointment, if made in pursuance of the power, is good at*law, and is assailable alone in equity on the ground of fraud. The obligation of a purchaser in certain cases to see to the application of the purchase money, is an obligation which does not affect his legal title, and can be enforced only in equity; whether the purchase be made from a trustee invested with the legal title or in pursuance of a mere power of sale. A bona fide purchaser without notice from one clothed with a mere power of sale, but who, in making the sale and conveyance, has pursued the terms of the power, is entitled to the same advantage and protection with such a purchaser from a trustee invested with the legal title.
Having stated the principles of law which bear upon the question under consideration, in my view of it, let us now see how they apply to this case. The will certainly confers very extensive power and discretion upon the executors in regard to the whole estate, real and personal. By its first clause it empowers them to set apart so much of the testator’s property, not specifically bequeathed, as they may think sufficient to produce a clear annual income, by rent or interest, of two thousand dollars; which is directed to be distributed among certain legatees for life. And after giving the family burying ground to certain of his relations, and one thousand dollars to one of his *603 nephews, it gives the balance of his estate to his nephews and nieces, (except the two therein before provided for.) It then proceeds in these words: “And for the purpose of making such division with greater facility, I hereby give to my executors, or such of them as may choose to act, full power to sell or otherwise dispose of the whole or any part of said property, in such time and manner and on such credit as to them may seem most beneficial for the whole.” And then follows a proviso in regard to the old mansion-house and lots thereto appurtenant.
The executors are required to set apart a very large amount of property or money, sufficient to produce a clear annual income, by rent or interest, of two thousand dollars. ' To do this, it might have been, and probably was, necessary to sell a portion of the estate, real or personal; and whether necessary to do so or not, a purchaser from them would not be presumed to know, and if he acted bona fide, would be protected in his purchase. In the residuary clause full power is given to the executors to sell or otherwise dispose of the whole or any part of the i*esiduum, in such time and manner, and on such credit as to them may seem most beneficial for the whole. It is scarcely possible to conceive broader terms in which a power of sale or disposition could be given. It is true this broad power is given “ for the purpose of making such divi- . sion with greater facility.” But surely this sentence was not inserted in the will to make the necessity of a sale for the purpose of a division, a condition precedan to the exercise of the power. If it had been, then, undoubtedly, no title could have been acquired under the power unless the condition precedent existed ; and the burden of proving its existence would devolve on the purchaser in order to maintain his title. This might be very inconvenient, if not impossible. But he who owns an estate may prescribe the terms *604 on which alone it shall cease to be his; and they who deal ^01' acquisition must take care that all the preterms and conditions are strictly complied wjth. Upon this principle it has been held, that if a mere power be given to sell real estate for the payment of debts in case the personal estate should be deficient, the power does not arise unless the personal estate be actually'deficient; and that a purchaser must,' at his peril, ascertain the fact, notwithstanding that the purpose provided for be the payment of debts generally. Whereas a mere power to sell for payment of debts generally, without such a condition precedent, would not impose upon the purchaser the obligation of seeing to the application of the purchase money, much less invalidate his title at law in case the purchase money should be misapplied. 1 Lom. Dig. 246, marg.; Sug. Law Yen. 847. But a reason-' able construction must be put upon the will to ascertain whether the testator intended to make the necessity of a sale for the purpose of division, a condition precedent to the exercise of the power. We must not construe the will in reference to what has since transpired, but must go back to its date, put ourselves in the place of the testator, in the midst of all the circumstances which then surrounded him, and thus ascertain the meaning of his language. He must have intended to have his estate disposed of to the best advantage for the benefit of his residuary devisees. To have imposed upon every purchaser the burden of ascertaining the actual necessity for a sale, would have defeated the purpose of the power, or greatly-impaired the capacity of his executors for its beneficial execution. An intention to create such a clog, ought to be shown by plain words, and not left to be inferred from doubtful ones. As to the nature of these conditional powers, and their impolicy and inconvenience, see Hill on Trustees 478 ; 2 Sug. Pow. 503. The preliminary *605 words in the clause conferring the power in this case were used merely to show the purpose for which it was conferred, and not to create a condition precedent to its exercise. A power of sale coupled with a trust is always conferred for some purpose; which is generally expressed on the face of the power: but such expression of purpose rarely creates a condition precedent to the exercise of the power. The power does not depend in this case on the necessity of a sale for the purpose of division — such a necessity is not mentioned in the will, and was not contemplated by the testator. The power was conferred “for the purpose of making such division with greater facility.” But whether, and to what extent, and in what manner, it would be proper to exercise it, was left to the sound discretion of the executors, subject alone to the control of the courts. The testator selected for the execution of the power and trust, his brothers and brother in law, in whom he reposed great confidence, and of whom he required no security as executors, except each for the other. They were the fathers of some, if not most, of the residuary devisees, and were doubtless men of high character and great responsibility. The estate entrusted to their care by the testator was of immense value; the penalty of each of the two executorial bonds which were given, being a million of dollars. He gave them full power to sell or otherwise dispose of the whole or any part of the property in such time and manner and on such credit as to them might seem most beneficial for the whole. Whether most beneficial for the whole or not, was referred alone to their discretion. The necessity, or even expediency, for.a sale of the whole for the purpose of making a division with greater facility, was hardly possible. And yet, full power is given to sell the whole or any part: as if to remove all restraint, and give assurance to purchasers that they might deal *606 with the executors without doubt as to their capacity oonfer a good title. The trust was to be one of duration, and to be executed at different times. The beneficiaries were numerous, and many if not most 0f them were probably infants. The large subject directed to be set apart to produce the annual rent or interest of two thousand dollars, could only be divided among the residuary devisees, as or after those to whom that income was given, died. The old mansion-house, with certain lots thereto appurtenant, was directed to be assigned, at a valuation of twenty thousand dollars, to one nephew, and in ease of his death under the age of twenty-one years, to another nephew, as so mueh of his share of the whole estate. The testator seems not to have contemplated that a final division would be made among his residuary devisees until after they all arrived at the age of twenty-one years: though he no doubt intended that in the mean time partial divisions might be made among them and advancements made to them, in property or money, as occasion might require; to be accounted for in the final division.
In view of all these circumstances I am of opinion that the power of sale, though conferred on the executors for a special purpose, was yet to be exercised at their discretion; that for the proper exercise of that discretion a bona fide purchaser from them for valuable consideration was not responsible ; and that a deed purporting to be a conveyance by them to such a purchaser in pursuance of the power, would at law, on its face, be a sufficient execution of the power. But the question is, Whether the deed under which the defendant in error claims in this case, has that effect ? There can be nothing on the face of that deed which can affect its validity, unless it be the words “ and for and in consideration of an exchange of land made with John Adams,” inserted therein.
*607 It was argued by the counsel for the plaintiff in error, that the deed shows on its face that it was executed in consideration of an exchange of land made with John Adams, one of the executors, individually, by the grantee Drew, and not for the purpose of making a division among the residuary legatees. It was argued on the other hand by the counsel for the defendant in error, that these words, taken in connection with the context, show that the exchange of land referred to was made with John Adams by the executors of Richard Adams, and not by Drew. I think the latter is the true construction. The deed refers to the will of Richard Adams, recites the power of sale therein contained, purports to be executed by the executors by virtue of the power vested in them, and contains covenants exclusively relating to the said testator’s estate; thus indicating that the exchange which was the consideration of the deed had been made by the executors in the execution, or supposed execution of their trust. The words before quoted consist with this view; and rather with it than the opposite. The executors, “ by virtue of the power vested in them, and for and in consideration of an exchange of land made with John Adams, and for the further consideration of one dollar by the said Drew to them in hand paid,” have granted, &c. That is, “ the executors, in consideration of an exchange of land made by them with John Adams,” &c. The substantial consideration, to wdt, the exchange, passed between John Adams and the executors. The nominal consideration, to wit, one dollar, was paid by Drew to the executors. Regarding this as the true construction of the words in question, Do they invalidate the deed at law ? I think not. The only ground on which it can be contended that they do, is that the executors had no power to make an exchange of land, especially with one of themselves. They had “full *608 power to sell or otherwise dispose of the whole or any part, &c. as to them might seem most beneficial for whole,” &c. It might have seemed to them most jjenegcjai for the whole to make an exchange of land with John Adams, “for the purpose of making the division with greater facility.” We may well suppose that the estate consisting perhaps of many parcels of land in different parts of the city, it might have been highly beneficial to the parties concerned, and much facilitated a division among them, to have made an exchange of some of the land for other land which was more saleable, or which, by being attached to some other land belonging to the estate, rendered it more desirable, and more susceptible of easy division. In such a case, did not the testator intend to empower his executors to make the exchange? If not, what did he mean by giving them power, not only to sell, but otherwise to dispose of the whole or any part ? Might not an exchange be a convenient and beneficial mode of executing even the power of sale ? An owner of a large estate in detached parcels, in selling at different times to different persons, often finds it convenient and prudent to sell portions of it for other property more easily or advantageously convertible into money. An exchange, it is true, is not a usual mode of making partition or making a sale; but it might be proper; and it would be too much to say that the executors, in this case, had no power under any circumstances or to any extent, however small, to make one. It does not appear to what extent the exchange was made. The record only shows that John Adams thereby acquired a small lot of little value in Adams’ Valley; for which he may have given in exchange another lot of much greater value to the testator’s estate. Then, does the circumstance of its being made with one of th'emselves ipso facto render it void? I think not. A trustee cannot be a purchaser *609 at his own sale. But then the purchase is only voidable, not void. It may be for the interest of the beneficiaries; who may therefore choose to let stand. They have an easy mode of avoiding it, if they elect to do so. But that is by a suit in equity, brought in proper time; and not by an objection to the title of the purchaser in a suit at law, especially after a great lapse of time, and after the title has passed to bona fide purchasers without notice of any such objection. 1 Sugd. Law Vend. ed. of 1851, p. 62, marg.; 2 Id. 887, and notes. An exchange stands on the same footing with a sale in this respect. I am therefore of opinion that the court did not err in refusing to give the second instruction asked for by the plaintiff in error, nor in giving the instruction Avhich it did in lieu thereof.
Thirdly. Did the court err in refusing to give the third instruction asked for by the plaintiff in error, and saying that it was a matter entirely for the jury?
The deed from Drew to Stevenson conveys “two small lots in Adams’ valley.” There is no patent ambiguity. A deed conveying all the land of the grantor in a certain county, is not void for uncertainty. Vanmeters' ex'ors v. Vanmeters, 3 Gratt. 148. Sor is a deed conveying all the estate both real and personal, to which the grantor is entitled. Mundy v. Vawter, Id. 518. Though notice of such a deed as the latter would not affect a subsequent purchaser from the grantor unless he had notice that the land purchased by him Avas embraced by the deed. Id. If Drew-had only two small lots in Adams’ Valley, then there Avas no latent ambiguity, and these two lots passed by the deed. But it is contended that if he owned the lot in controversy, he had three small lots in Adams’ Valley, and that the deed is therefore void for uncertainty ; or, at least, did not pass the lot in controversy. It is true that one of the lots owned by Drew in *610 Adams’ Valley was composed of two small lots, one wJlich had belonged to Richard Adams, and the other to John Adams. But John Adams had acquired ^ former from the executors of Richard Adams, no ¿[oubt with the view of adding it to the latter, which was too small to be of much value; and afterwards sold the lot, composed of the two small parcels, to Drew. The two parcels were conveyed to Drew by different deeds,- because Richard Adams’- executors had made no deed to John Adams, (who was one of them;) and therefore Richard Adams’ executors made a deed directly to Drew for one parcel, while John Adams made a deed to him for the other. But the two deeds bear date on the same day, and are parts of the same transaction.. The two parcels, when they became the property of one owner, became but one lot;' which well answers the description of a small lot, fronting but sixty-two feet on Fifteenth street, and running back about one hundred feet in the form of a wedge. Drew owning this lot and another in Adams’ Valley, (which other had also at the same time been derived from John Adams,) shortly thereafter executed the deed to Stevenson, conveying “ two small lots in Adams’ Valley.” . That that deed embraced the parcel of land which had belonged to Richard Adams as aforesaid (and which is the land in controversy) is evident, not only from what has been already said, but from the intention plainly apparent on the face of the deed to convey all the property of the grantors. But even if it were doubtful whether one or both of the parcels aforesaid were intended to be conveyed, I would construe the deed most strongly against the grantor, and so as to give it effect, rather than that it should be void for uncertainty.
Fourthly. I think the Circuit court did not err in refusing to give the fourth instruction asked for by the plaintiff in error, and giving the instruction which it did in lieu thereof.
*611 Fifthly. I think the court did not err in sustaining the objection of the defendant in error to the admissibility of the recorded -settlements of the accounts Richard Adams’ executors, which the plaintiff in error offered to produce in evidence. The deed being made by the executors to Drew in consideration of an exchange of land between the executors and John Adams, and not of money paid to them by Drew; of course the executorial accounts would show no credit to the estate for the price of the land conveyed. But the deed being at law upon its face, as I have already endeavored to show, a sufficient execution of the power of sale and conveyance conferred by the will of Richard Adams upon his executors; it follows, as I have also endeavored to show, that the title of Drew under that deed was good at law, and cannot there be impeached by any evidence of a breach of trust by the executors in not accounting for the price of the land conveyed. Therefore the settlements which were offered for that purpose were irrelevant and inadmissible evidence.
Sixthly. For the same reason, I think the court did not err in giving the instruction asked for by the defendant in error, that the evidence of Drew, insofar as it affected or disclosed the consideration upon which the deed to him from Adams’ executors was founded, was not to be regarded by the jury. That evidence was introduced to show a breach of trust by the executors ; for which purpose, according to what has been said, it was inadmissible. But it tends to confirm the construction I have put upon the deed and to repel that construction, which would make the deed a breach of trust on its face. In any view of the evidence, it was properly excluded.
Seventhly and lastly. Did the court err in overruling the motion of the plaintiff in error for a new trial on the ground that the verdict was against law and evidence?
*612 The objections taken to the rulings and opinions of the court during the trial, which are also relied on as for a new trial, having already been considered an(j ¿jSp0setj 0f; ^ unnecessary to notice them any further. The remaining ground relied on is that the verdict was contrary to the evidence. The bill of exceptions states the evidence of the witnesses examined on the trial, instead of the facts appearing to the court to have been proved by such evidence. This court cannot therefore, according to our well settled practice, take cognizance of the case and reverse the judgment, unless by rejecting all the parol evidence for the exceptor, and giving full force and credit to that of the adverse party, the decision of the court below still appears to be wrong. The application of that test puts an end to the case. But looking at the whole evidence, I do not think that the judgment ought to be reversed on the ground that the verdict was against the evidence. The only objection taken to the verdict under this head is, that it is for the whole lot claimed in the declaration, while the evidence shows that the plaintiff in error was in possession of, and claimed title to, only a part of the lot, viz: the part conveyed to Drew by the executors of Richard Adams. The plea of not guilty put in issue the title to the whole lot, and gave no notice of an intention to claim only a part. The evidence showed that the defendant in error was entitled to the whole, and that the plaintiff in error was in possession of, and claimed title to a part. On this evidence the jury properly rendered a verdict for the premises in the declaration mentioned. Code, cb. 135, § 25, p. 561. At all events, if there be any error in this respect, it is not an error to the prejudice of the plaintiff in error, and therefore the judgment should not be reversed on that ground.
I am of opinion that there is no error in the judgment, and that it ought to be affirmed.
*613 Samuels, J.
In my opinion the will of Eichard Adams conferred on his executors a mere power over his real estate; that it gave them (amongst other things) power to set apart so much of the real estate as they might think sufficient to produce a clear annual rent of two thousand dollars, for payment of annuities for the lives of the annuitants; that if the executors thought proper to exercise this power, by setting apart real estate for this purpose, then the direction to the executors to pay the rent for the lives of the annuitants, must be held, by implication of law, to confer an estate of equal duration upon the executors; that as the interest of the annuitants respectively expired, the residuary devisees would succeed to their portions. That in this mode, to this extent and for this purpose only would the executors acquire any interest in the testator’s real estate j not by devise directly from him, but by virtue of the power conferred on them.
I am further of opinion that the consideration mentioned in the deed of bargain and sale from Adams’ executors to Drew, must be held to move from the bargainee. This consideration is of two parts, to wit: “ an exchange of land with John Adams,” “and for the further consideration of one dollar by the said Drew to them in hand paid,” &c. The parts of this consideration seem to have taken different directions ; one having gone to John Adams alone in his own right; the other to the executors as such. If the executors, as such, had made an exchange with John Adams acting in his own right, it is difficult to perceive why the fact should be mentioned in their deed to Drew, or how it could be regarded as a consideration paid by him; yet without doubt the substantial consideration was the exchange, and not the nominal sum of one dollar.
Holding then that the deed was intended to perfect *614 an exchange between John Adams and Drew, I can-Holding then that the deed was intended to perfect an exchange between John Adams and Drew, I can-no^ aiQ7 authority to make it in the power con-by the will, large as it is. I am of opinion, therefore, that the judgment should be reversed, for the reason that the Circuit court erred in refusing to instruct the jury that the deed was invalid.
I concur in the opinion of Judge Moncure on the other questions presented by the record.
Allen, P. and Lee, J. concurred in the opinion of Moncure, J.