Syllabus—Statement.

## Richmond.

### LOVING AND WIFE V. ASHLIN'S ADM'R ET ALS.

#### April 6th, 1882.

CHANCERY PRACTICE—*Cross-bill—Breach of trust—Case here.*—Creditor's bill to subject real estate of J, deceased, is taken for confessed as against his representatives.   J had been one of the executors of A, who had bequeathed to J's wife for life, remainder to her child or children, a slave and her increase.   This slave, in 1860, came into the possession of J, as such executor, and as husband of the life-owner, and was then sold by J, who never accounted for the proceeds.   J and his wife died, leaving one child, M, who married L.   Account of debts having been ordered, L and wife set up their claims for the proceeds of the sale of the slave. This claim the master rejected.   L and wife, by leave of court, then filed their cross-bill, which was demurred to by the administrator of J, and dismissed by the court below.

HELD :

1. The claim of L and wife was a charge upon J's estate ; and the defendant in the cross-bill should have been required to answer, and the claim should have been adjudicated.
2. J committed a breach of trust.   The *c. q. t.* is entitled to affirm the sale and resort to the proceeds.   See *Brown* v. *Lambert*, 33 Gratt.

Appeal from decree of circuit court of Fluvanna county. Lewis J. Walton, sheriff of said county, and, as such, *a. d. b. n. c. t. a.* of Robert W. Ashlin, deceased, suing for himself and the other creditors of Stephen P. Johnson, deceased, was plaintiff, and John S. Bowles, executor of said Johnson, and M., only child of said Johnson, and wife of Edgar Loving, were defendants, in a creditor's bill.   A cross-bill was filed by Loving and wife against said executor, and, on demurrer, was dismissed, and Loving and wife appealed.

Opinion states the facts.

*A. R. Blakey* and *J. O. Shepherd,* for the appellants.

*Wm. B. Pettitt,* for the appellees.

CHRISTIAN, J., delivered the opinion of the court.

The original bill in this cause was a creditor's bill, filed by the personal representative of Ashlin, who sued for himself and all other creditors of Stephen Johnson, who will contribute to the costs and expenses of suit. The object of the suit was to subject the real estate of said Johnson to the payment of certain judgments recovered against his executor in favor of complainant.

This bill was taken for confessed as to the executor and heirs of Johnson, and by a decree of the circuit court entered on the 12th April, 1876, certain accounts were ordered to be taken by a commissioner.

Pending these proceedings—to-wit: on the 12th September, 1876, the appellants, Loving and wife, filed by leave of the court their cross-bill. In that bill they allege that William Appleberry, the grandfather of the female complainant in said cross-bill, departed this life in the county of Fluvanna some time in the year 1858, having first made and published his last will and testament, which was duly admitted to probate and recorded in the county court of said county. That by said will be loaned to his daughter, Sallie Johnson, a certain negro girl Katy, and her increase for life; remainder in fee to the children of said Sallie Johnson. That Sallie Johnson, to whom said negro girl was bequeathed for life, was the mother of the female complainant, Mary E. Loving, and the wife of the debtor, Stephen Johnson, whose real estate was sought to be subjected by the original creditor's bill. The bill further al-

leges that Stephen Johnson qualified as one of the executors of William Appleberry, and as such executor and by virtue of his marital rights as the husband of the legatee, Sallie (the daughter of Appleberry), came into possession of the negro woman Katie, in whom her wife had a life interest, and her children the remainder in fee. That in the spring of 1860, the said Johnson sent the negro woman Katy to Richmond and had her sold, and that he realized from said sale the sum of $1,250; which sum he received and held in the place and stead of said negro woman. The bill further alleges that Stephen Johnson died in 1861, and his wife, the life-tenant, died in 1871; that Mrs. Johnson had two children—a son, W. A., who died under age and without issue; and the female complainant, Mary E., who has since intermarried with Edgar Loving, and that she and said Loving, her husband, are the sole beneficiaries of the bequest of her grandfather, William Appleberry.

They claim that Stephen Johnson, having sold the negro women and received the proceeds of sale, must account to them as the parties entitled in fee, after the termination of the life estate; that he took the property (a slave) *as a trustee* for the life tenant and the parties entitled in remainder in fee, and that, having converted the property into money, he was liable, and his estate after his death, for whatever amount was realized by a sale of the trust property.

They claim that they are creditors of the estate of Stephen Johnson, and ask that the suit already pending of Ashlin's Adm'r *v.* Johnson's Ex'or may be heard with their cross-bill, and they make defendant to their cross-bill the executor of Stephen Johnson.

There was a demurrer to this cross-bill. The circuit court sustained the demurrer and dismissed the bill. It is from this decree, dismissing the bill on demurrer, that an

appeal was allowed by one of the judges of this court. I am of opinion that this decree of the circuit court, sustaining the demurrer and dismissing the cross-bill, is plainly erroneous.

By the sixth clause of the will of William Appleberry he gives certain slaves (naming them) to his daughter. To Sally Johnson (the mother of complainant in the cross-bill, Mary E. Loving) he gives Katy. He decrees in said sixth clause: "It is my wish that my daughter be allowed to hold said negroes * * * so long as my daughter lives. At my daughter's death, I give and bequeathe said negroes and their increase, if any, to the children of my daughter forever."

Now it is plain, under the provision of the will of William Appleberry, Mrs. Johnson had a life estate in the negro woman Katy, and her child or children had the remainder in fee, either vested or contingent. Johnson, as the executor of Appleberry, as well as the husband of Sally (the daughter of Appleberry), took possession of this slave. He sold her and received the proceeds of such sale ($1,250).

I think it is plain that the estate of Johnson is liable to the person entitled to this fund in remainder. Whether Mrs. Loving is entitled to the whole or a part of the proceeds of sale, is a question not necessary to be passed upon now.

Johnson held this slave as executor and in right of his wife as life-tenant. He had no right to sell her. In the sale he committed a breach of trust. *He* had no authority to sell this slave. The title was not in him, nor in his wife. She had only a life estate in this slave. His sale could not effect the rights of those entitled in remainder, and they may now assert their rights to the proceeds of such sale.

As was said by Judge Burks in *Brown* v. *Lambert,* 33 Gratt.

262: "The doctrine is elementary that where a trustee commits a breach of trust by a sale of the trust subject without authority, the *cestui que trust* (beneficiary) may, at his option, disaffirm the sale and pursue the property in the hands of a volunteer or a purchaser for value with notice of the trust, or he may affirm the sale and resort to the proceeds in the hands of the trustee," &c.

Judge Story lays down the rule in these words: "There is no rule of equity applicable to trusts which is more uniformly acted upon by the courts than that one who assumes to act in relation to trust property without just authority, however *bona fide* may be his conduct, shall be held responsible both for the capital and the income to the same extent as if he had been *de jure* trustee." 2 Story Eq. § 261; see also 2 Perry on Trusts, § 846, and cases there cited; see also Judge Allen's opinion in *Cross* v. *Cross*, 4 Gratt. 257; Judge Joynes' opinion in *Tabb's Curator* v. *Cabell*, 17 Gratt. 160; and Judge Staples' opinion in *Moorman* v. *Smoot*, 28 Gratt. 80.

Upon these authorities it is plain that those entitled in remainder have the right to hold the estate of Stephen Johnson responsible for the proceeds of the sale of the negro woman Katy, bequeathed by the will of Wm. Appleberry.

As to the contention in argument here that the slave Katy was emancipated by the results of the war, and would have been of no property value to those entitled in remainder, it is sufficient to say the same question was raised and disposed of in *Brown* v. *Lambert, supra.*

The fact is patent that the negro woman Katy was sold by Johnson; that he received the purchase money in a sound currency; and it is plain his estate must account for this purchase money so received by him.

I am of opinion, for the reasons stated, that the circuit

court erred in dismissing the cross-bill of Loving and wife on demurrer.

The demurrer, I think, should have been overruled, and the defendant required to answer, and the claim of the complainants be passed upon and determined.

I am of opinion that the decree of the circuit court be reversed.

DECREE REVERSED.