# Staunton.

WASSERMAN AND ANOTHER v. METZGER.

September 13, 1906.

1. VENDOR AND PURCHASER—*Bona Fide Purchaser—Complete Purchaser Priorities.*—As a general rule, in order for a vendee to be protected as a purchaser for a valuable consideration and without notice, he must have received a conveyance and paid the whole of the purchase money before notice of the defect in his title; but this doctrine is subject to the qualification that where the first purchaser has not the legal title, and the subsequent purchaser has paid the purchase money, and, although he has not received the legal title, has the best right to call for it, before he receives notice, he shall be entitled to priority, notwithstanding he has not actually acquired the legal title.

2. VENDOR AND PURCHASER—*Complete Purchaser—Payment of Purchase Money.*—As a general rule, actual payment of the purchase money is required in order to constitute a vendee a complete purchaser; giving security for its payment, or even the giving of negotiable notes, is not sufficient, unless the parties are so circumstanced that a court of equity cannot prevent the enforcement of such security or notes.

3. VENDOR AND PURCHASER—*Purchaser of Equitable Title—Equities.*— The general rule is that a purchaser of a mere equitable title must take the place of the person from whom he purchases. He stands in his vendor's shoes, and gets the title of his vendor and nothing more, subject to all equities existing against it in the hands of his vendor.

4. VENDOR AND PURCHASER—*Defense of Bona Fide Purchaser—Complete Purchaser.*—The plea of a purchaser for value without notice, if sustained, is a complete defense, but in order to establish this defense, the party setting it up must be a complete purchaser, unless he can bring himself within the protection of section 2472 of the Code of 1904, giving a purchaser who has paid part of the purchase money before notice a lien on the property purchased for the amount so paid.

5. DEED OF TRUST—*Invalid Sale by Trustee—Equities—Case at Bar.*—A trustee's sale under a deed of trust made in violation of the terms of the trust is void as to a beneficiary whose rights are defeated thereby. In the case at bar, certain real estate was conveyed to a trustee to secure the payment of two negotiable notes payable to the complainant. One of these notes was paid and thereupon surrendered by the payee to the maker, without, however, being marked paid. One M. then obtained possession of the note by collusion with the maker, and, claiming to be the owner of the note, and that default had been made in payment, had the property sold under the deed of trust to satisfy the note, becoming himself the purchaser, the payee and holder of the other note having no actual notice of the sale. The equitable title to the property was subsequently purchased by defendant, Mrs. W., who had no notice at the time of her purchase of the fraud, or that the sale was not made in accordance with the terms of the trust, but who did not pay the purchase money before receiving notice. *Held:* As between the complainant, who was the payee and holder of the unpaid note, and the defendant, Mrs. W., the trustee's sale was void, and that the complainant had a valid and subsisting lien upon the property for the residue of the debt due to her.

6. EQUITY—*Failure of Payee of Note to Mark it Paid—Subsequent Purchasers of Securities—Equal Equities.*—Where a deed of trust is given to secure two notes payable to the same person, the failure of the payee on surrendering one of the notes to the maker, on payment thereof, to mark it paid, does not affect the priority of his lien on the property for the note still unpaid as against a *bona fide* subsequent purchaser of the equitable title from a purchaser at a fraudulent sale under the deed of trust to satisfy the note already paid. In such case the equities are equal, and the one prior in time must prevail. (Keith, P., and Cardwell, J., dissenting.)

7. DEED OF TRUST—*Fraudulent Sale—Ratification.*—The action of a beneficiary in a deed of trust in receiving a portion of the proceeds of a fraudulent trust sale is not a ratification of the sale, and does not estop him from objecting to its validity, when he acted without knowledge of all the facts and without having taken the advice of counsel.

Appeal from a decree of the Court of Law and Chancery of the city of Norfolk. Decree in favor of complainant. Two of the defendants appeal.

*Affirmed.*

The opinion states the case.

*White, Tunstall & Willcox,* for the appellants.

*Burroughs & Bro.,* for the appellee.

BUCHANAN, J., delivered the opinion of the court.

This is the second time this case has been to this court. Upon the former appeal the merits of the case were not considered, but it was remanded in order that the bill might be amended, bringing in a new party. 102 Va. 836, 47 S. E. 820. The material facts of the case are the same now, however, as they were then, and briefly stated are as follows:

By a deed dated December 10, 1892, Samuel Wasserman and wife conveyed to L. B. Allen, trustee, a house and lot in the city of Norfolk to secure to Sophia Metzger the payment of two negotiable notes for $1,250.00 each, payable one and two years after date, respectively, and dated December 10, 1892. In January, 1902, one P. J. Morris, representing himself to be the owner of one of the notes secured by the deed of trust, and the National Bank of Commerce of Norfolk, claiming to be the holder of that note as collateral security for a debt due it from Morris, informed Allen, trustee, that default had been made in the payment of the note, and directed him to sell the trust subject to satisfy the debts secured. The trustee thereupon advertised and sold the property at public auction, and Morris became the purchaser at the price of $2,200.00, on the 21st day of January, 1902. The trustee conveyed the property to Morris by deed dated as of the day of the sale, which was acknowledged for recordation two days afterwards. On the 25th of that month Morris and wife conveyed the prop-

erty to trustees to secure to the Mutual Building and Loan Association of the city of Norfolk the payment of $2,000.00, which Morris had borrowed from it. On the 30th day of the next month Morris and wife conveyed the property to David Kalberman, as trustee for Mrs. Rikchen Wasserman, the wife of Samuel Wasserman (but who was divorced from him soon afterwards) at the price of $2,400.00, the grantee in the deed assuming the payment of the debt due the Building and Loan Association secured upon the property. After deducting the costs and expenses of the sale made by Allen, trustee, to Morris, the trustee paid one-half of the proceeds of the sale upon the note which Morris and the Commercial Bank claimed to be the owner and holder of, as before described, and notified Mrs. Metzger, the payee and holder of the other note, that he had a sum of money in his hands to be paid upon that note. A few days afterward the agent of Mrs. Metzger, who seems to be quite an old woman, called upon the trustee, pursuant to the notice. The agent denied any knowledge of the sale made by the trustee, stated that the note held by the parties who had directed the trustee to make sale of the house and lot had been paid, and that his mother held the other note, which was still due and unpaid, and declined to receive the money in the hands of the trustee. Subsequently, he did receive and credit it upon the note held by his mother, but at the time he received the money he did not have knowledge of all the facts, nor had he or his mother taken the advice of counsel at that time. The note claimed by Morris and the bank had been paid five years or more before the sale by the trustee, and had been delivered by the payee, or her agent, to Samuel Wasserman, the maker. Mrs. Metzger, who lived in the city of Norfolk, had no notice of the sale made by the trustee, and gave him no direction to sell. Mrs. Wasserman, the vendee of Morris, and the present

holder of the house and lot, had no actual notice of the fraud of Morris (who was in collusion with Samuel Wasserman) in claiming the note and causing the property to be sold by the trustee, nor that the sale made by Allen, trustee, was not made in accordance with the terms of the trust.

Upon a hearing of the cause the trial court held that the sale of the trustee and the conveyances subsequent thereto were null and void as to the plaintiff, Mrs. Metzger, and declared that she had a valid and subsisting lien upon the house and lot for the residue of the debt, and decreed its enforcement. From that decree Mrs. Wasserman and her trustee alone appealed.

The question we are to determine, therefore, is whether or not there is any error in that decree to their prejudice.

One of the grounds upon which it is insisted that the decree is erroneous is that Mrs. Wasserman was a purchaser for value and without notice of the fraud or irregularities in the sale made by the trustee.

If she were a complete purchaser it may be that she would be entitled to the protection which she claims; but upon that question I express no opinion, as I do not think it is involved in this appeal. Upon the facts of this case I do not think that Mrs. Wasserman is a *bona fide* purchaser for value and without notice. Neither she nor her trustee has the legal title, nor has she paid the purchase money.

As a general rule, in order for a vendee to be protected as a purchaser for valuable consideration and without notice, he must have received a conveyance and paid the whole of the purchase money before notice of the defect in his title. But there is a qualification of that general doctrine, viz: "That where the first purchaser has not the legal title and the subsequent one has *paid his money* and has not received the legal title, but the *best right to call for the legal title,* before he re-

ceives notice, he shall be entitled to priority, notwithstanding he has not actually acquired such title." 2 Minor's Inst. 1029-30 (1st ed.) ; *Mutual Assur. Soc.* v. *Stone,* 3 Leigh 218, 236 ; *Doswell* v. *Buchanan,* 3 Leigh 365, 23 Am. Dec. 280 ; *Cox* v. *Romine,* 9 Gratt. 27, 29 ; *Lamar* v. *Hale,* 79 Va. 147.

It is true, as insisted, that Judge Christian in his opinion in *Preston's Admr.* v. *Nash,* 75 Va. 949, 956-7, does state that he was of opinion "that a *complete purchaser* is one who has paid the purchase money and who, though he has not received a conveyance of the legal title, *is entitled to call for it."* But that opinion was not the opinion of the court, though erroneously so stated in the report of the case in 75 Va. The case was afterwards directed to be reported again (76 Va. 1, 11) so as to correct that mistake. Judge Moncure did not sit in the case ; Judge Anderson concurred in Judge Christian's opinion ; Judges Staples and Burks concurred in the result, but not in the reasoning of Judge Christian, and based their conclusion upon the doctrine of equitable estoppel. The view expressed by Judge Christian as to what will constitute a complete purchaser is not only contrary to the decisions of this court, above cited, but is in conflict with the maxim which prevails in equity, as well as at law, that he who is prior in time is prior in law— that where two equities are equal the prior equity shall prevail. For if the mere fact that a subsequent purchaser has paid his purchase money and has the right to call for the legal title makes him a complete purchaser and entitles him to the protection which complete purchasers receive at the hands of a court of equity, the fact that another has an equal or superior equity, prior in point of time, will be of no avail.

In no view of this case can Mrs. Wasserman be regarded as a complete purchaser. It does not appear that she has ever paid more than one-sixth of the price which she agreed to pay. It

is true that in Morris' deed to her she assumed the payment of the debt due the Building and Loan Association. But she has not paid that sum, nor is she bound to pay it, if the consideration for her undertaking to pay fails. The only ground upon which the Building and Loan Association can hold Mrs. Wasserman liable for its debt is that of equitable subrogation. She made no contract with the association, nor did it furnish any consideration for her assumpsit. As was said by Judge Staples in *Willard* v. *Worsham,* 76 Va. 392, 401-2, "Where the grantee of lands assumes the payment of a mortgage thereon, as between himself and his grantor he becomes in equity the personal debtor and the grantor the surety, and the latter may insist that the grantee shall pay the debt for his relief and protection. The creditor, upon familiar principles, may claim the benefit of all collateral securities held by his debtor, by way of equitable subrogation. In doing so, however, he stands in his debtor's shoes, and is substituted to the rights and remedies of the latter, but nothing more. In other words, the new creditor takes the place of the old one and succeeds to his rights." *Osborne* v. *Cabell,* 77 Va. 462, 468.

As between Mrs. Wasserman and Morris, if the consideration for her undertaking fails and she does not obtain what she purchased, Morris could not compel her to pay the Mutual Building Association debt. And as that association stands in his shoes and has no greater rights against her than Morris had it cannot compel her to pay. Mrs. Wasserman not having paid that debt is, for the purposes of this case, in no worse condition than if she had not assumed to pay, because she can be fully protected against the debt assumed if she loses the house and lot.

*Actual payment* of the purchase money is required in order to constitute a vendee a complete purchaser, as a general rule. *Lamar* v. *Hale, supra;* 2 Minor's Inst. 1029-30. Giving se-

curity for its payment—not even the giving of negotiable notes—is not sufficient, unless the parties are so circumstanced that a court of equity cannot prevent their enforcement. 23 Am. & Eng. Ency. Law (2d ed.), 489, 490; 2 Pom. Eq. Jur., sec. 751.

Mrs. Wasserman was, therefore, not a complete purchaser, but the purchaser of a mere equity which had not been paid for, and she had no right to call for the legal title when she received notice of the fraud of Morris and the irregularity in the trustee's sale. A payment after notice would give her no right to call for the legal title, for whatever she does to perfect her title after notice is done *mala fide* and does not avail. 2 Minor's Inst. 1029-1031, and cases cited.

The general rule is that the purchaser of a mere equitable title must take the place of the person from whom he purchases. He stands in his vendor's shoes. He gets the title of his vendor and nothing more. *Yancey* v. *Mauch,* 15 Gratt. 300, 306; *Briscoe* v. *Ashby*, 24 Gratt. 454, 475, and cases cited; *Evans Bros.* v. *Roanoke Savings Bank,* 95 Va. 303, 304, 28 S. E. 323; *Sands, &c.,* v. *Stagg, ante,* p. 444, 52 S. E. 633. See, also, 2 Pom. Eq. Jur., sec. 756. The principle underlying this doctrine is stated as follows, in *Briscoe* v. *Ashby, supra*: "The reason of the distinction between the purchaser of a legal and an equitable interest seems to be that the protection accorded to *bona fide* purchasers is a departure from the general rule of jurisprudence, which holds that no man can transfer a greater right than he possesses, and regards the vendee as standing in the same position as the vendor under whom he claims. This exception was made in equity against the rights and remedies which it had called into being, and in favor of purchasers who bought in good faith and under the impression that they were acquiring the legal title. But when the purchase is of a mere equity, which owes its existence to a court of chancery and

cannot be enforced without its assistance, the reason for departing from the general maxim, *'Nemo plus juris in alium transferre potest quam ipse habet,'* is at an end and the right acquired by the vendee is limited to that of the vendor. When, therefore, a purchaser buys an equitable estate or interest with a knowledge of its real character and without obtaining a legal title he can found no claim on the mere fact of the purchase, and must stand or fall by the title of his vendor. 2 Lead. Cas. in Eq., 95, and cases there cited. So it was declared in the most unequivocal manner by Ch. J. Marshall, in *Shirras* v. *Craig,* 7 Cranch (U. S.), 34-48, 3 L. Ed. 260, that the purchaser of an equitable title takes it subject to all existing equities;  .   .   . In *Chew* v. *Barnett,* 11 Serg. & R. (Pa.) 389, Ch. J. Gibson said: 'When it is asserted that a purchaser for valuable consideration takes the title free of every trust or equity of which he has no notice, it is intended of a title perfect on its face; for every purchaser of an imperfect title takes it with all its imperfections on its head. It is his own fault that he confides in a title which appears defective to his own eyes, and he does so at his peril. Now, every equitable title is incomplete on its face. It is in truth nothing more than a title to go into chancery to have the legal estate conveyed, and, therefore, every purchaser of a mere equity takes it subject to any clog that may lie on it, whether he has notice or not.' "

This language of Chief Justice Gibson, in *Chew* v. *Barnett,* was again quoted approvingly by this court in *Evans Bros.* v. *Roanoke Savings Bank, supra.*

If the contest here was between Morris and Mrs. Metzger alone, there would be no question of her right to have the trustee's sale set aside for the sale was not only made in violation of the terms of the trust, which of itself would be sufficient to justify the court in setting the sale aside at which he became

the purchaser (*Taylor* v. *King,* 6 Munf. 358, 8 Am. Dec. 746; *Harris* v. *Harris,* 6 Munf. 367; *Pownal* v. *Taylor,* 10 Leigh 172, 34 Am. Dec. 725; *Norman* v. *Hill,* 2 P. & H. 676; *Sulphur Mines* v. *Thompson,* 93 Va. 315, 25 S. E. 232; *Preston* v. *Johnson, ante,* p. 238, 53 S. E. 1; *Shears* v. *Building, &c., Asso.* (W. Va.), 52 S. E. 860; but he was also a party to the fraud by which the trust sale was procured to be made. Mrs. Wasserman standing in his shoes, as under the authorities quoted she clearly does, can, under the facts of this case, make no defense as against Mrs. Metzger that he cannot make. The fact that she had no notice of the irregularity in the sale, or of Morris' fraud, is wholly immaterial, as she acquired only such rights in the property as he had; for, as already shown, the purchaser of a mere equitable title takes it subject to all prior equities, and this, too, without regard to the question whether he had notice of them or not, where the holder of the prior equity was not required to and could not give notice of it under the registry law. *Briscoe* v. *Ashby, supra,* and authorities cited; *Yancey* v. *Mauch, supra.*

While, as was said by Judge Carr, in *Doswell* v. *Buchanan,* 3 Leigh 365, 382, 23 Am. Dec. 280: "The plea of a purchaser for value without notice, if sustained, is a perfect defense, and that against such purchaser equity will not take the slightest step, not even to perpetuate testimony against him or take from him any advantage the law gives him . . . it is equally clear that this defense is a complete defense or no defense at all," unless the purchaser can bring himself within the protection of section 2472 of the Code, which provides that, although a subsequent purchaser is not a complete purchaser, "as against any person claiming under a deed or other writing which shall not have been admitted to record before payment by a subsequent purchaser for a valuable consideration of the whole or a

part of his purchase money, such subsequent purchaser, notwithstanding such deed or other writing be admitted to record before he becomes a complete purchaser, shall in equity have a lien on the property purchased by him for so much of his purchase money as he may have paid before notice.".

It is insisted that Mrs. Metzger's equity, although prior in time to that of Mrs. Wasserman, is inferior to it because Mrs. Metzger surrendered the note held by her against Louis Wasserman when it was satisfied without marking it paid, and thus enabled him, in collusion with Morris, to perpetrate the fraud which resulted in the sale to Mrs. Wasserman without fault on her part. The payee in the note had the right to it when paid, and it was not negligence in her not to mark it satisfied to prevent the owner of it from perpetrating a fraud upon some one by the use of his own property—an act which no one would anticipate, and which could not be done without the collusion of another. Certainly her failure to mark it satisfied, if negligence at all, was not such negligence as will deprive her of her prior equity.

In discussing the question, Mr. Pomeroy says: "The rule extends to gross negligence, which is tantamount in its effects to fraud. An equity otherwise equal, or even prior in point of time, may, through the gross laches of its holder, be postponed to a subsequent interest which another person was enabled to acquire by means of such negligence. To admit the operation of this rule in either of its phases, and to displace the otherwise natural order of priority, there must be intentional deceit; that is, intentional misrepresentation or suppression of the truth, or else gross negligence. In the one case, the party possessing the claim which it is sought to postpone must both know of his own right and also of the other person's intention to acquire, or of his acts in acquiring, an interest in the same

subject-matter. In the other case there must be gross laches, for mere carelessness or ordinary negligence will not suffice, according to the weight of modern authority."

In the note to *Bassett* v. *Nosworthy,* Vol. 2, Pt. 1, White & Tudor's Lead. Cas. in Eq. (4th Am. Ed) 54, it is said: "It should, nevertheless, be remembered that a rule by which one is precluded from asserting a right which is indisputably his own, operates as a forfeiture, and should not be enforced, unless he has been guilty of gross negligence, which, if not collusive, prepares the way for fraud. *Evans* v. *Beckwell,* 6 Veasey 190; *Plumb* v. *Fluitt,* 2 Anstruther 432; *Colyer* v. *Finch,* 19 Beavan 500; 5 House of Lords Cas. 905. A man may fall short of the care which a large experience of life and business would suggest without being responsible to third persons for a loss which they might have avoided if he had been more cautious," citing, among other cases, *Biddle* v. *Bayard,* 13 Pa. St. 150.

In that case the plaintiff lost a pocket-book containing a negotiable certificate of stock endorsed in blank. The certificate was purchased by the defendant from a third person and without notice that the vendor had no title. The plaintiff brought trover, and it was contended for the defense that the plaintiff should have endorsed the instrument to his own order; that by carrying it about with him endorsed in blank, he had enabled the finder to mislead the defendant, and should consequently bear the resulting loss. This argument was overruled and judgment entered for the plaintiff.

The action of Mrs. Metzger in receiving a portion of the proceeds of the trust sale cannot, under the facts and circumstances of the case, be regarded as a ratification of the sale made by the trustee, nor does it estop her from objecting to the validity of the sale. When she received the money she was not fully informed of all the facts connected with the sale (*Smith's*

*Ex'or* v. *Miller,* 98 Va. 534, 541-2, 37 S. E. 10, and no prejudice has resulted to anyone by reason of her receiving the money which was paid her. *Smith* v. *Powell,* 98 Va. 431, 36 S. E. 522. Prior to that time the trustee had conveyed the property to Morris, Morris had executed the deed of trust to secure the Building and Loan Association the payment of the money loaned him; and Mrs. Wasserman had purchased the equity of redemption in the property from Morris, assumed the payment of the Building and Loan Association debt, and had paid the residue of the purchase price in cash. The only effect of Mrs. Metzger's refusal to receive the money paid her by the trustee would have been to leave it in his hands until after the controversy in this case was settled.

I am of opinion that there is no error in the decree complained of to the prejudice of the appellants, and that it should be affirmed.

CARDWELL, J. (dissenting):

I am constrained to adhere to a view of this case entirely opposed to that taken by the majority of the court, and shall review the cases presented in the petition for the appeal and as argued by counsel here.

The case was formerly before this court, at which time the court, without passing upon the merits of the case, decided that the court below should have directed the complainant to amend her bill so as to make The National Bank of Commerce a party defendant. 102 Va. 837, 47 S. E. 820. When the case went back the bill was so amended and the bank made a party. It answered, stating its connection with the note in question, which it had at one time held as collateral; denied knowledge

of the fraud alleged, or that it received any part of the proceeds of the sale made by L. B. Allen, trustee. Depositions were taken, the case reheard, and on February 25, 1905, the court held that there was no liability on the bank, and as to other parties made the same decree which was entered at the previous hearing. From this decree the case is again before us on appeal, but no error is assigned to the decree so far as it decides that there is no liability on the bank, and therefore the case upon its merits is the same as to the parties concerned, other than the bank, that it was on the former appeal.

It will be necessary to restate the principal facts of the case, which may be summarized as follows:

By deed bearing date on the 10th day of December, 1892, Samuel Wasserman and wife conveyed to L. B. Allen, as trustee, certain real estate in Norfolk, Virginia, in trust to secure to appellee, Sophia Metzger, two negotiable notes of even date with the deed, each for the principal sum of $1,250.00, and bearing interest at the rate of six *per cent. per annum* from December 26, 1892, and payable, respectively, one and two years after date.

By deed dated March 20, 1893, the said Samuel Wasserman and wife conveyed the property to Louis Wasserman for certain considerations, part of which was the assumption by Louis Wasserman of the payment of the above-mentioned notes.

In January, 1902, one P. J. Morris, representing himself to be the holder of one of the above-mentioned notes, and the president of the National Bank of Commerce, representing that this note was held by it as collateral for an indebtedness of P. J. Morris to the bank, informed L. B. Allen, as trustee in the deed of December 10, 1892, that default had been made in the payment of the said note, and directed him to sell the prop-

erty under said deed of trust, as thereby required, to satisfy the debts secured.

The trustee, L. B. Allen, having satisfied himself that the conditions had arisen under which he was required to execute the trust, advertised the property for sale, as required by the deed, for at least ten days in the *Norfolk Landmark,* a newspaper of large circulation, printed in the city of Norfolk, and pursuant to said advertisement, on the 21st day of January, 1902, at the Real Estate and Stock Exchange of Norfolk, sold the property at public auction to the said P. J. Morris for $2,200 cash. He accordingly conveyed the property to P. J. Morris by deed, bearing date the 21st day of January, 1902, and acknowledged on the 23d day of January, 1902.

In this deed the trustee made the following recital: "And whereas the said S. Wasserman having made default in the payment of said notes, the holder thereof had directed that the said property be sold by said trustee, as provided by said deed."

The "said notes" referred to in this recital were identified by the previous recital in the deed as the notes secured by the said deed of trust.

By deed bearing date the 25th day of January, 1902, P. J. Morris and wife conveyed the property to certain trustees to secure to the Mutual Building Association of Norfolk $2,000, money borrowed. By deed bearing date the 30th day of January, 1902, P. J. Morris and wife sold and conveyed the property to David Kalberman, as trustee for Rikchen Wasserman, for $2,400, she assuming as part of the purchase money the above-mentioned lien of $2,000. Mrs. Wasserman fully complied with the terms of her purchase, and her deed went to record on the 31st day of January, 1902.

The bill filed by Mrs. Metzger claims that she was the holder of one of the notes secured by the deed of trust to Allen, trus-

tee; that she had received from the trustee on the note only
$995.47, leaving a balance due as of February 20, 1902, of
$334.93; that the note which P. J. Morris and the National
Bank of Commerce represented themselves as holding had, in
fact, been paid long before the trustee, Allen, had been re-
quested by them to sell; that she knew nothing of the sale, which
was therefore void as to her; and praying that the series of
deeds above mentioned since the trust deed of December 10,
1892, be set aside, and the property subjected to pay the bal-
ance due her.

The decree appealed from grants the prayer of the bill; that
is to say, it sets aside as null and void all deeds made conveying
the property in question since the deed to Allen, trustee, of De-
cember 10, 1892, and subjects the property to the payment of
the balance claimed by Mrs. Metzger as being due to her on the
second note secured by said deed of trust.

The proof in the cause discloses that Mrs. Metzger has been
continuously living in Norfolk since the deed to Allen, trustee,
was made, as were her grown sons (who were business men),
all during the period the property was being advertised by the
trustee for sale and at the time it was sold; she did not, how-
ever, go upon the witness stand to prove she knew nothing
about the sale or the advertisement. It is practically conceded
that the note held by Morris had been paid prior to the direc-
tion to the trustee to sell the property; but it clearly appears
from the proof that Mrs. Wasserman, the purchaser of the
property from Morris, had no notice or knowledge whatever
of this fact, and before receiving such notice she had purchased
for a valuable consideration, and had practically paid the entire
purchase money and received a conveyance of the property.
It further appears that while Mrs. Wasserman had been the
wife of Samuel Wasserman, who, doubtless, participated in

the fraud perpetrated by Morris when he caused the property to be advertised and sold by Allen, trustee, she had lived apart from him for many years, and finally and before any of the transactions connected with the sale and purchase of this property, had secured from him an absolute divorce.   There is not the slightest evidence in the record that Mrs. Wasserman had actual notice of the fraud and wrong-doing complained of in this case, and as expressly found by the lower court as a fact "Mrs. Wasserman had no actual notice of the fraud of Morris and Sam Wasserman, nor of the irregularity of the sale."   She had employed counsel to examine the title, and counsel employed, after investigation, reported to her in favor of the title and she thereupon consummated the transaction.

It will be observed, therefore, that the fraud complained of is that the note on which the direction to Allen, trustee, to sell had been given, had in reality been paid; and the fact that the sale was made pursuant to the request of a holder of a paid note is the irregularity relied on by the complainants in the court below.   It will also be observed that Mrs. Wasserman was not the purchaser from the trustee, but was the purchaser from that purchaser.   Were the controversy here between Mrs. Metzger and P. J. Morris, the purchaser from the trustee, it would be of easy solution, since the fraud of Morris is made so apparent that he would have no standing whatever in a court of equity.

The question, therefore, to be determined is whether a purchaser from a purchaser who bought at a trustee's sale has constructive notice that the recitals made by the trustee in his deed to the purchaser are false.   The court below practically held such to be the case; and this is the only error assigned for a reversal of the decree appealed from.

Upon the face of the deed from Allen, trustee, to Morris there is nothing whatever to suggest irregularity in the sale by

the trustee, or anything to suggest to a purchaser from Morris that the recitals made by the trustee in his deed were false. We, therefore, have a case where the purchaser from a purchaser at a trustee's sale is a purchaser for value and without actual notice of fraud or irregularity in the sale made by the trustee. It is a case of the highest importance to the security of titles in this State, and requires the gravest consideration at the hands of the court.

It has been the law in this State since the case of *Taylor* v. *King,* 6 Munf. 365, 8 Am. Dec. 746, that a trustee in a deed to secure debts does not exercise a mere "naked power," and that a deed of such a trustee passes the legal title, even though made in violation of the trust. The opinion in that case, decided in 1819, says: "With respect to the deed in this case, it is not at this day to be questioned that the deed of a trustee conveys a legal title. The trustee himself takes a legal, though defeasible title; and that title became absolute in his vendee by the deed, in a court of law. We are also of opinion that in a court of law the vendee need not show that the conditions of the trust deed have been complied with." See, also, *Underwood* v. *McVeagh,* 23 Gratt. 409; *Sulphur Mines* v. *Thompson,* 93 Va. 315, 25 S. E. 232, and authorities there cited.

The case is, however, different with respect to title attempted to be made by a person clothed with a mere "naked power," not coupled with an interest, for in such a case it is necessary for the person claiming the title to establish the fact that every requisite to the exercise of the power preceded it. *Carrington* v. *Goddin,* 13 Gratt. 601; *Sulphur Mines* v. *Thompson, supra.*

In the first class of cases mentioned—that of a title made by a trustee in a deed of trust to secure debts—a *bona fide* purchaser for value and without notice of the breach of the trust

is protected; while in the last class mentioned—that of a sale under a "naked power"—such a purchaser is not protected.

It is not controverted that in Virginia the legal title passes by deed of the trustee, and hence the title of the purchaser is perfect at law; but it is contended that this principle does not govern in a court of equity, and it has been so held in cases where the title of the purchaser from a trustee was called in question. To this effect are the cases of *Norman* v. *Hill,* 2 P. & H. 676; *Brown* v. *Lambert,* 33 Gratt. 62; *Loving* v. *Ashlin,* 76 Va. 911.

But that is not the case here. As remarked, if the controversy was between Mrs. Metzger and Morris it would be proper to set aside the conveyance obtained by Morris from Allen, trustee, because, if for no other reason, of the fraud of Morris. But the controversy here involves the right of Mrs. Wasserman to the property, who was in no way connected with or had knowledge of the fraud of Morris.

If it were conceded that a purchaser from a trustee clothed with not merely a "naked power" to sell, but an absolute power, because coupled with an interest, must see to it that all of the prerequisites to the exercise of the power have been complied with, is this rule to be applied to a purchaser from a purchaser from the trustee? And if so, would not the rule have to be extended to a purchaser of the same property, however far he may, by intervening conveyances, be removed from the original purchaser from the trustee? Were such the established rule of law, it will be seen that our registry acts would be of little avail.

In *Sulphur Mines Co.* v. *Thompson, supra,* it was held that a trustee clothed only with a naked power, not coupled with an interest and, therefore, not absolute but conditional, would not by his deed invest a purchaser from him with title unless the conditions existed upon which a sale was authorized, and the

sale made in accordance with the trust; that the burden of proving these facts was upon the party claiming under the deed, and the recitals in the deed, unless made so by statute, were not *prima facie* evidence of the existence of such facts. There is nothing, however, in the opinion that can be construed as extending the rule to a deed from a trustee clothed with absolute, not conditional, power to sell; and the only inference to be drawn from the opinion is that where this power is in the trustee his deed invests a purchaser from him with title, and the recitals in the deed that the prerequisites to the exercise of the power preceded it were to be considered as *prima facie* evidence of the existence of such facts. It is now so declared by statute, passed February 10, 1898, and amended March 7, 1900 (Code 1904, sec. 3333a), and the rule is made applicable to all deeds made in the execution of a deed of trust, mortgage or any judicial proceeding theretofore or thereafter made. I am not unmindful of the well settled principles relied on by appellee, Mrs. Metzger, stated at p. 508, 23 Am. & Eng. Ency. L., and sustained in *Wood* v. *Krebs,* 30 Gratt. 714; *Long* v. *Weller,* 29 Gratt. 347, and other cases that might be cited, that a purchaser of real estate must look to the title papers under which he buys and is charged with notice of all the facts appearing upon their face, or to the knowledge of which anything there will conduct him; that he has no right to shut his eyes and his ears to the inlet of information and then say he is a *bona fide* purchaser without notice; and whenever inquiry is a duty the party bound to make it is affected with knowledge of all which he would have discovered had he performed the duty. But the binding force of the principles maintained by these authorities is to be measured by the facts and circumstances of the particular case to which it is sought to apply the principles.

It is said by the court below, in its opinion made a part of the record, that although Mrs. Wasserman "had no actual notice of the failure of Mrs. Metzger to direct Allen to sell, she had constructive notice of the trust to Allen and of all of its provisions, and by reason of such constructive notice she knew that Allen could not sell without Mrs. Metzger's direction, and it was her duty to ascertain by inquiry if such direction had been given." In this view I cannot concur, and do not think that the authorities cited in support of it sustain the view. They are the authorities to which I have just adverted. If the view be correct as to Mrs. Wasserman the rule must be applied to a purchaser of property once conveyed by a trustee, no matter how far removed from the immediate purchaser from the trustee, and when it would be impossible for him to obtain the information that it is held that Mrs. Wasserman should have obtained before taking her conveyance from Morris. Such a rule, it seems to me, would be attended with baleful consequences to purchasers of real estate in this State.

There is nothing whatever upon the face of the deed from Allen, trustee, to Morris to suggest inquiry as to the validity of the title it conveyed, but let us, for the sake of the argument, admit that it became Mrs. Wasserman's duty to inquire if the prerequisites of the power in Allen to sell the property preceded the exercise of the power. Of whom was she to make the inquiry? Surely the inquiry was first to be made of Allen, the trustee, and can it be doubted that he would have told her that the recitals of his deed to Morris were correct? Should she then have doubted Allen's statement and inquired further; and if so, of whom? Had she inquired of Morris, doubtless he would have told her the same that Allen did, and perhaps have shown her the note in question, either in his possession or Allen's, past due and not marked paid, in the condition it was

by reason of the failure of Mrs. Metzger to so mark it when she delivered it to Sam Wasserman or to some one for him.

In *Carrington* v. *Goddin,* 13 Gratt. 602, the opinion by Moncure, P., says: "A *bona fide* purchaser without notice, from one clothed with a mere power of sale, but who, in making the sale and conveyance, has pursued the terms of the power, is entitled to the same advantage and protection with a purchaser from a trustee invested with the legal title."

That case is clearly authority for the position that a *bona fide* purchaser from the trustee invested with a legal title and with an absolute power to sell would be protected, even though the trustee did not pursue the terms of his power, and this on the principle that the plaintiff who seeks to upset the title must resort to equity to do so, and equity will withhold its hand whenever the defendant has equal equity and will permit the law to prevail. A court of equity will not disarm a *bona fide* purchaser for value of his legal estate in favor of one who has a prior equity in point of time.

In *Fletcher* v. *Peck,* 6 Cranch (U. S.) 87, 3 L. Ed. 162, Marshall, C. J., says: "If a suit be brought to set aside a conveyance obtained by fraud, and the fraud be clearly proved, the conveyance will be set aside as between the parties, but the rights of third persons, who are purchasers without notice, for a valuable consideration, cannot be disregarded. Titles, which, according to every legal test, are perfect, are acquired with that confidence which is inspired by the opinion that the purchaser is safe. If there be a concealed defect, arising from the conduct of those who had held the property long before he acquired it, of which he had no notice, that concealed defect cannot be set up against him. He has paid his money for a title good at law, he is innocent, whatever may be the guilt of others, and equity will not subject him to the penalties attached

to that guilt.    All titles would be insecure and the inter-
course between man and man would be very seriously ob-
structed, if this principle be overturned."    See also *Snyder* v.
*Grandstaff,* 96 Va. 477, 31 S. E. 647, 70 Am. St. Rep. 863.

In *McClanachan* v. *Siter,* 2 Gratt. 280, the opinion says:
"The doctrine that whatever puts a party upon inquiry amounts
to notice is inapplicable to the provisions of the statute in re-
gard to both registered and unregistered conveyances.    The
registry is not intended to put subsequent purchasers and in-
cumbrancers upon inquiry, but to put an end to the necessity
for all inquiry.    It is notice in point of law to all persons of
the contents, import and legal effect of the registered instru-
ment; but not of other matters connected with the subject, not
apparent upon the face of the instrument.    The statute con-
trasts this notice in point of law with notice in point of fact of
any title or claim not disclosed by a registered instrument.
The notice in point of fact must be such as to affect the con-
science of the subsequent purchaser or incumbrancer.    It may
be either actual, in other words direct and positive, or it may
be circumstantial and presumptive.    But it is not sufficient
if it merely puts the party upon inquiry.    It must be so strong
and clear as to fix upon him the imputation of *mala fides. Day*
v. *Durham,* 2 Johns. Ch. (N. Y.) 182.

"It is not enough that an over-prudent and cautious person,
if his attention has been called to the circumstance in ques-
tion would have been likely to seek an explanation of it.    There
must be some clear neglect to inquire, after actual notice, that
the title is in some way defective, or some fraudulent or willful
blindness, as distinguished from mere want of caution." *Briggs*
v. *Rice,* 130 Mass. 50; *Grunders* v. *Reid,* 107 Ill. 304; *Wood-
ward* v. *Page,* 5 Ohio St. 70.

The reasoning of the learned judge below in his written

opinion, and of the argument here for Mrs. Metzger is that the deed of trust to Allen was a part of the record title, and as it provided that he was to sell when directed by a holder of one of the notes secured, this put upon any person who dealt with the property at any time within the period of the statute of limitations on inquiry, and if the trustee committed a technical breach of his trust, although misled by fraud, any person dealing with the property within the period mentioned has constructive notice of the breach and must bear its consequences. This proposition clearly denies the whole doctrine of innocent purchaser for value as applied to the acts *in pais* of such a trustee, and according to it every such purchaser must be affected with constructive notice of the breach of the trust. No distinction is made in the argument for that proposition between a purchaser from the trustee and derivative purchasers; so that any purchaser of the property within the period of the statute must, at his own peril, inquire into and establish the fact, not by *prima facie,* but by conclusive proof, that everything mentioned in the deed as a direction to the trustee has in fact been followed. Of the two classes of requirements made by deeds to secure the payment of a debt, one calls for acts on the part of the trustee which necessarily involve public notoriety, such as advertising in a prescribed way and for a prescribed time, and that the sale shall be on certain terms of cash or credit. The other class embraces acts that do not involve notoriety, are essentially private in their nature and cannot be inquired into and ascertained, if at all, without the greatest inconvenience in many instances, among which is whether the holder of the debt has actually directed the sale to be made. As to the first class of requirements, there seems to be nothing unreasonable in holding, as was held in the recent case of *Preston v. Johnson, ante,* p. 238, 53 S. E. 1, and other

cases, that the purchaser at the trustee's sale has constructive notice of these requirements, and must see that the advertisement of the sale at which he is bidding conforms to the requirements of the deed, and that the terms of sale are those prescribed by the deed, and there is no hardship on him, nor inconvenience to the public interest, in requiring this simple act of reasonable prudence on his part, the neglect of which would be gross negligence. But these cases go no further than that, and are certainly not authority for the proposition that a subsequent purchaser of this property is to be charged with constructive notice that the creditors secured had not directed the trustee to make the sale he made, or that the debt secured had in fact been paid.

The authorities do not hold it sufficient to affect a person with constructive notice that he *might have* acquired the information, but that he *ought to* have acquired it, and would have done so *but for gross negligence* on his part.

Says the opinion in *Wilson* v. *Wall,* 6 Wall (U. S.) 91, 18 L. Ed. 727: "A chancellor will not be astute to charge a constructive trust upon one who has acted honestly and paid a full and fair consideration without notice or knowledge. On this point we need only to refer to Sugden on Vendors, where he says: 'In *Ware* v. *Lord Egmond,* the Lord Chancellor Cranworth expressed his entire concurrence in what, on many occasions in late years had fallen from judges of great eminence on the subject of constructive notice—namely, that it was highly inexpedient for courts of equity to extend the doctrine. When a person has not actual notice, unless the circumstances are such as enable the court to say, not only that he might have acquired, but also that he ought to have acquired it but for his gross negligence in the conduct of the business in question. The question, then, when it is sought to affect a purchaser with

constructive notice, is not whether he had the means of obtaining and might by prudent caution have obtained the knowledge in question, but whether not obtaining it was an act of gross or culpable negligence.' "

It is, of course, not to be lost sight of that "means of knowledge, with the duty of using them, are in equity equivalent to knowledge itself"; but means of knowledge are not sufficient. There must, in addition, be the duty of using them.

This court has often declared the principle as to what is required to make it the duty of a person to use his means of knowledge to ferret out undisclosed facts to be that the person must have "knowledge of facts and circumstances which are naturally calculated to excite suspicion in the mind of a person of ordinary care and prudence. *Fisher* v. *Lee,* 98 Va. 163, 35 S. E. 441, and authorities cited.

In *Williams* v. *Jackson,* 107 U. S. 482, 2 Sup. Ct. 814, 27 L. Ed. 529, there were two deeds of trust to secure debts. The first gave to the trustees power to release the land on payment of the notes secured, but the payment of the notes was a condition precedent to their power to release. The notes were assigned to a third party by the payee, and, after this was done, the original payee and the trustees united in a release deed. Being assured that the record was clear as to the title of the property which was conveyed in the first deed and which he purposed to loan money upon, Williams loaned the money, taking the second deed upon the property to secure the loan. He had no actual knowledge of the facts connected with the release of the first deed, and the question was whether he had constructive notice, or was entitled to the position of a *bona fide* purchaser for value without notice. The opinion of the court, citing a number of authorities to sustain the conclusion reached, says: "To charge Williams with constructive notice of the fact

that the notes (secured by first deed) had not been paid, in the absence of any proof of knowledge, fraud, or gross or willful negligence on his part, would be inconsistent with the purpose of the registry laws, with the settled principles of equity, and with the convenient transaction of business. . . The equity of Williams being at least equal with that of the plaintiffs, the legal title held for Williams must prevail and he is entitled to priority."

That case is quoted from and approved in *Evans Bros.* v. *Roanoke Savings Bank,* 95 Va. 301, 28 S. E. 323, where there was a release by a marginal entry on the deed book by the original payee of notes secured by a first deed of trust after the transfer of the notes and before they were paid. The question was between the innocent transferee of these notes and an innocent lender of money upon the faith of the record, taking in good faith a trust deed upon the property to secure the money loaned. *Held:* That the trustee in this second deed obtained the legal title for the benefit of the lender of the money secured, and the lender had a right to rely upon the public record as to the title to the property conveyed; that to charge him with constructive notice that the notes secured by the first deed of trust had not been paid, in the absence of any proof of knowledge, fraud or willful negligence on his part, would be inconsistent with the purpose of the registry laws, with the settled principles of equity, and with the convenient transaction of business.

Since it is conceded in the case at bar that Mrs. Wasserman had no actual knowledge of the failure of Mrs. Metzger to direct Allen to sell, or that her first note had been paid, and especially in view of the fact that both notes secured by the deed to Allen were long past due, what was said in the cases just adverted to applies with equal force to this case. The

deed from Allen did not give Mrs. Wasserman notice that the note in question was paid; on the contrary, it advised her that the note was unpaid. So there is nothing whatever upon the face of the deed from Allen, or by way of proof in this record, upon which to rest the imputation to Mrs. Wasserman of means of knowledge to ferret out the undisclosed fact that the note was unpaid, which it was her duty to use, and the neglect to make use of which was gross or culpable negligence, and such negligence is essential to constructive notice. *Wilson* v. *Wall, supra; Williams* v. *Jackson, supra; Evans Bros.* v. *Roanoke S. Bk., supra; Bank* v. *Hannan,* 75 Va. 608; *McClanachan* v. *Siter, supra.*

Our statute, *supra,* provides that the recitals made by a trustee in his deed of conveyance "shall be *prima facie* evidence that such sale was regularly made, and that the other recitals in such deed or conveyance are true." Is a purchaser from a purchaser from a trustee to be required to disregard the statute and treat the recitals in the trustee's deed as not *prima facie* evidence that his sale was regularly made and the other recitals untrue, and if he fails to ascertain all the facts behind the record to be held guilty of gross or willful negligence? I think not. The principle upon which a purchaser for value without notice is protected in a court of equity has its origin in the necessity for one of two innocent persons to suffer, the question being which one. Leaving entirely out of view the fact that Mrs. Metzger made it possible for Morris and Sam Wasserman to defraud her by delivering to one of them the note in question without cancelling it, to hold that Mrs. Wasserman was a purchaser for value without notice would be no greater hardship upon Mrs. Metzger than had to be borne by the losing parties in the cases to which I have referred.

The distinction between the original purchaser at the sale

under the deed of trust or mortgage and a subsequent purchaser is well recognized in the authorities, and the latter is held to be entitled to protection in the absence of actual notice.

In *Wilson* v. *So. Park Com'rs,* 70 Ill. 46, the opinion says: "In this case there are innocent purchasers, and where there are such and the deed executed by the trustee recites a compliance with all such requirements, they are not bound to go behind the deed to ascertain whether or not the recitals are true. This rule is announced in the cases of *Reese* v. *Allen,* 5 Gilm. (Ill.) 236, 48 Am. Dec. 336; *Cassell* v. *Ross,* 33 Ill. 244; 85 Am. Dec. 270; *Hamilton* v. *Lubukee,* 51 Ill. 415, 99 Am. Dec. 562. In such a case the remote purchaser affected must be chargeable with notice. In such cases the person executing the trust deed selects his trustee, and usually conveys to a person in whom he reposes confidence, both as to his integrity and business capacity, and having reposed the confidence and conferred the power on him to act, if it is abused, he must be held responsible for the improper selection. Even where he authorizes the assignee to execute the power, he must be equally responsible, as he confers the power, and if improvidently done, the innocent must not suffer for his want of prudence, unless they can be charged with notice of the abuse of the power. It would be highly inequitable and unjust to hold otherwise, and would lead to ruinous sacrifice of the trust property, as none but the speculator would purchase, and he at low rates, if the remote purchasers, at every step in the chain of titles, were compelled to collect and preserve the evidence of the regularity of the trustee's sale."

To what was there said as to the responsibility of the grantor in a deed of trust, with reference to the character and business capacity of the trustee he selects it may be added, according to the rule prevailing in this state, that the trustee in a deed

of trust to secure the payment of debt is to be as acceptable to the creditor secured, both with respect to his integrity and business capacity, as to the grantor.

In *Hamilton* v. *Lubukee, supra,* it is said: "It is certainly true that the record of the mortgage was notice to them (subsequent purchasers), and that it informed them only of the facts stated in it. It gave them no information of the kind of notice published for the sale of the mortgaged premises, nor of any irregularities which might have been committed in it, nor that the price paid was inadequate. All those were matters *in pais,* and must be brought home to their knowledge on a proper case made, sustained by proof."

As opposed to the views taken in the cases above cited, counsel for Mrs. Metzger rely upon a class of cases to which belong *Burwell* v. *Fauber,* 21 Gratt. 463, and *Long* v. *Weller, supra,* but those cases are easily to be distinguished from the case here. In one of them the purchaser traced his title to a will, and it was held that he was chargeable with constructive notice of that will and what it, disclosed; and in the other the purchaser bought from a special commissioner and he was charged with notice of the decree directing the sale.

So in *Wood* v. *Krebs, supra,* it was held that the purchasers under a decree of a court were bound to know all that the suit in which the decree was made disclosed, and could not rely on the certificate of the clerk, that the records of his office disclosed no liens or incumbrances on the property, as sufficient to entitle them to the defense of *bona fide* purchasers without notice. In that case, as in *Briscoe* v. *Ashby,* 24 Gratt. 454, the purchaser was claiming title under a decree in a chancery cause, and it was held that the case did not come within the registry laws, and that the purchaser was chargeable with notice of what the record in the chancery cause disclosed.

Counsel for Mrs. Metzger cite also cases in which it was held that a conveyance by a trustee in a deed, after the debt it secured was paid, conveyed no title to the grantee, and the principal case is *Shippen* v. *Whittier*, 117 Ill, 282, 7 N. E. 642, cited as *Temple* v. *Whittier* (Ill.) 7 N. E. 645. It would unduly extend the length of this opinion to state that case fully. Suffice it to say, the opinion shows that the decision turned on three propositions: (1) That there had been a conveyance of the mortgagor's estate to the mortgagee, and the grantee in that conveyance had extinguished the first deed of trust debt, which in equity had the effect of a merger; (2) that the trustee who sold and conveyed the property was clothed with only a "naked power," and a purchaser under a mere "naked power" purchases at the peril of the sale being void if a material condition precedent to the existence of the power does not exist; and (3) that the express provision in the deed, that it should be void if the note it secured was paid, was, in view of the limited power in the trustee to sell, sufficient to impose upon a purchaser of the property the duty of showing the existence of the debt at the time of the trustee's sale. The court does not evince a disposition to impair as authority its older decisions, which I have cited, and others, and does not even allude to them. On the contrary, the opinion says: "This case is not analogous to those where a title passes which is subject to be defeated on the ground of the fraudulent act of the parties, and in which it is held that a *bona fide* purchaser without notice is to be protected. In this case no title passed. What appears to be a conveyance is not a conveyance, any more than a deed of a person in no wise connected with the title to the property."

It is suggested, both in the opinion of the learned judge below and in the argument for Mrs. Metzger here, that the weight of the decisions by the Illinois court is to be lessened by the fact

that they were actions in ejectment.    This is true as to some of them, but not as to all, notably the case of *Gunnell* v. *Cockerell,* 79 Ill. 79, which was a bill in equity and a case in point. There the trustee was empowered to sell on demand of one-fourth of the creditors, and was required to give notice of the time, place and terms of the sale.    He violated the trust by selling privately to one Caswell, who afterwards sold and conveyed to Howell & Lord.    *Held:* That while a purchaser under a trust deed containing a power of sale is chargeable with notice of defects and irregularities attending the sale and their effect cannot be evaded by him, the rule is different as to remote and subsequent purchasers; that if there is nothing upon the face of a deed from the trustee in a deed of trust to the purchaser showing that the sale was made in violation of or contrary to the power contained in the deed of trust, a subsequent purchaser who has no notice in fact of any irregularity in the sale by the trustee, will be protected as an innocent purchaser.    See, also, the more recent case in point, decided by the same court in 1901, of *Tennart* v. *Quilty,* 60 N. E. 913.

We are also cited by the learned counsel for Mrs. Metzger to the cases of *Kenney* v. *Jefferson Bank* (Colo. App.) 54 Pac. Rep. 404; *Bent Oteer Co.* v. *Whitehead* (Colo. Sup.) 54 Pac. Rep. 1023; *Penny* v. *Cook,* 10 Iowa 539; *Wells* v. *Estes* (Mo.) 55 S. W. 225; and *Walker* v. *Beauchler,* 27 Gratt. 511, as sustaining the view taken by the lower court of this case; but I do not consider these cases as authority for that view.    In the first named, the purchaser asking protection as an innocent purchaser without notice was clearly not such a purchaser.    The second was a case of an immediate purchaser.    The third was a case in which the controversy was between the beneficiary in the deed of trust and the grantor, the beneficiary being also the purchaser of the property, and had all possible notice that the

sale was wrongful.  In the fourth, the case was also between the grantor in the deed of trust and a purchaser from the trustee, who was also the beneficiary in the trust deed, and was plainly not a *bona fide* purchaser.  In the fifth, it was merely held that where the debtor was within the Confederate lines and the creditor within the Union lines during the civil war, the former could not pay nor the latter receive the debt, and, therefore, the deed of trust could not be enforced and a sale under it was invalid; that the purchaser from the purchaser at the trustee's sale could stand in no better condition than the purchaser at the sale, as he was present at the sale and knew as well the circumstances as did the first purchaser; but the decree protected the last purchaser in all respects by restoring the *status quo* without loss to any one.

In none of the cases to which we have been referred, or that I have been able to find, is the strength of the decisions of this court and others which I have mentioned, and which maintain the principle that in order for Mrs. Metzger to succeed in this case, upon the proposition under consideration, she must convict Mrs. Wasserman not only of gross negligence, but of bad faith, in the least impaired.  The record failing to so convict Mrs. Wasserman, she is in equity as at law to be considered a *bona fide* purchaser without notice, and as such entitled to protection.

It is contended, however, that she is not a complete purchaser, inasmuch as she has not paid the debt of the Building Association, which she assumed, nor has she the legal title.

The view taken by the majority of the court is, that while the Building Association, to the extent of its lien, is a complete purchaser, having loaned Morris that amount of money and caused the legal title to be conveyed to the trustees in the deed of trust securing its debt, and therefore giving it priority

over Mrs. Metzger's debt, Mrs. Wasserman cannot be regarded as a complete purchaser because it does not appear that she has paid more than one-sixth of the purchase price she agreed to pay.

I fully agree that to the extent of its lien the Building Association is a complete purchaser, with priority of right over Mrs. Metzger to have its lien satisfied out of the property in question, but cannot agree that Mrs. Wasserman is to be regarded as having paid only-sixth of the purchase money she agreed to pay Morris, and for that reason not entitled to protection as a complete purchaser. True, Morris conveyed to her only an equity of redemption, but in my view this carried with it the right to call for the legal title from the trustees of the Building Association, who, after the conveyance from Morris to Mrs. Wasserman, held the legal title for her benefit, subject only to the lien in favor of the Building Association. Upon the payment of this lien and its release on the record, the release would not enure to the benefit of Morris or anyone else other than Mrs. Wasserman. As between her and Morris, her grantor, clearly she stands in the same position as if she had paid him the whole of the purchase money in cash. *Moore v. Holcomb,* 3 Leigh 527, 24 Am. Dec. 683, 23 Am. & Eng. Enc. L. 489; *Jackson* v. *Glover,* 9 Cow. (N. Y.) 13; *Partridge v. Chapman,* 81 Ill. 137.

Payment in actual cash is not indispensable. It is enough that there is an absolute change of the purchaser's legal position for the worse. Such a condition is brought about by the undertaking of the purchaser to pay a debt due from his vendor to a third person, in such a manner that he is absolutely substituted as the debtor in the place of his vendor. 2 Pom. Eq., sec. 751 and notes.

It is conceded, as it would seem from the argument, that if

Mrs. Wasserman had paid in cash, before notice of Mrs. Metzger's claim, the whole of the purchase money to Morris, or had she so paid the Building Association's debt assumed by her, she would be entitled to absolute protection as a complete purchaser for value, and I am unable to see that she would have been, in either of those positions, any more entitled to protection than she is now, occupying the position of an innocent purchaser who has paid the purchase price, so far as her vendor is concerned, and cannot hold the property without the payment of the debt of the Building Association, it not being questioned that the amount she actually paid Morris and the amount of the debt she assumed was a full and fair consideration for the property.

But let it be conceded, for the sake of the argument, that Mrs. Wasserman cannot be regarded as a complete purchaser: Which has the better equity, Mrs. Metzger or Mrs. Wasserman? I am of opinion that the equity of the latter is superior to that of the former. Is the manner in which Mrs. Metzger has dealt with her equity to be left out of view? Surely not. By delivering up the first of the two notes she held when it was paid, without canceling it by endorsing thereon "Paid," Mrs. Metzger made possible the fraud of Morris, resulting in injury to Mrs. Wasserman, who, as is conceded, is innocent of that fraud; and it needs no citation of authority for the proposition that in such a contest as is here between Mrs. Metzger and Mrs. Wasserman, where one of the two parties is to suffer, the one guilty of no neglect or wrong-doing must be regarded as having an equity superior to that of the other party. It is only where equities are equal that the maxim, "Prior in time, prior in right," has application. Whether negligence is to be regarded as gross or not, is to be measured by its resulting injury to the party affected. Not only was Allen, trustee, Mrs. Metzger's

agent, for whose acts Mrs. Wasserman was in no way responsible, but had Mrs. Metzger herself not been negligent Mrs. Wasserman would not be in the position she now occupies and have to suffer to the extent, at least, of the amount of the claim asserted by Mrs. Metzger. In my view, the negligence of Mrs. Metzger cannot, under the circumstances, be regarded by a court of equity other than gross, and, therefore, the equity she asserts should not be preferred over that of Mrs. Wasserman.

With reference to the remaining contention of appellants that Mrs. Metzger should be held to have ratified the sale of Allen, trustee, to Morris, by accepting from the trustee a part of the purchase money as a payment on the note she then held, I agree with the opinion of the court that the conduct of Mrs. Metzger, as disclosed in the record, was not such as should estop her on this ground to assert her right to payment of the balance due on that note.

For the reasons stated, I am of opinion that the decree appealed from should be reversed and annulled, and that this court should enter the decree the lower court ought to have entered, dismissing the bill of Mrs. Metzger with costs to appellant.

KEITH, P. (dissenting):

Conceding that Mrs. Wasserman was not a complete purchaser clothed with the legal title, or with the right to call for it; that she acquired only an equity, I am of opinion, notwithstanding, that upon the facts of this case, for which I refer to the opinion of Judge Cardwell, she is better entitled to consideration at the hands of a court of equity than Mrs. Metzger. In other words, that while neither one of them has more than an equitable interest in the subject of controversy, their equities

are not equal, and it is only where equities are equal that priority of time becomes decisive as to priority of right.

In my view of the case, Mrs. Metzger has so acted as to require the court to postpone her right to that of Mrs. Wasserman. Mrs. Metzger held a lien by deed of trust of record. She so dealt with that lien that the record upon which Mrs. Wasserman had a right to rely showed that the deed had been executed and the lien created by it satisfied. It is conceded that the Building Association, as a result of the action of Mrs. Metzger's trustee, gets a legal title and is a purchaser for value and without notice; it is conceded that Mrs. Wasserman purchased the equity held by her in good faith and without actual notice of Mrs. Metzger's rights. So far as the record goes, it not only gave her no notice of any adverse right, but, showing as it did the deed of trust securing Mrs. Metzger and its execution and satisfaction, it lulled her suspicions and was an assurance that she had nothing to fear from that quarter; and yet while these facts are held sufficient to transmit the legal title and a complete equity to the Building Association, the conclusion of the court leaves Mrs. Wasserman, who was equally deceived by the false appearances and equally innocent, to suffer the consequences and to be postponed in her rights to Mrs. Metzger, who could have protected herself and others—to Mrs. Metzger, whose agent made the sale under conditions which on their face it is admitted authorized him to sell, and whose deed conferred upon Morris the legal title which he in turn conveyed to secure the loan to him from the Building Association.

In the face of the conduct of Mrs. Metzger, in the face of the acts of the trustee in the deed to secure her debt, who was her agent and not Mrs. Wasserman's, I cannot think that the equities existing between Mrs. Wasserman and Mrs. Metzger are equal.

In *Hume* v. *Dixon,* 37 Ohio St. 67, it is said: "When the equities are equal the rule of law is adopted that the oldest in point of time will prevail; but it is a mistake to suppose that the age of an equity is of material significance when the equities are not otherwise equally meritorious. It is only where all things considered the conflicting equities are *equally merito-rious in quality* that the element of time becomes material."

In *Rice* v. *Rice,* 2 Drewry's Rep. 76, 77, 78, it is said: "What is the rule of a court of equity for determining the pref-erence as between persons having adverse equitable interests? The rule is sometimes expressed in this form: 'As between persons having only equitable interests, *qui prior est tempore potior est jure.'* This is an incorrect statement of the rule; for that proposition is far from being universally true. In fact not only is it not universally true as between persons hav-ing only equitable interests, but it is not universally true even where their equitable interests are precisely the same nature, and in that respect precisely equal; as in the common case of two successive assignments for valuable consideration of a reversionary interest in stock standing in the names of trustees, where the second assignee has given notice, and the first has omitted it.

"Another form of stating the rule is this: 'As between per-sons having only equitable interests, if their equities are equal, *qui prior est tempore portior est jure.'* This form of stating the rule is not so obviously incorrect as the former. And yet even this enunciation of the rule (when accurately considered) seems to me to involve a contradiction. For when we talk of two persons equal or unequal equities, in what sense do we use the term 'equity'? For example, when we say that A has a better equity than B, what is meant by that? It means only that, according to those principles of right and justice which a court of equity

recognizes and acts upon, it will prefer A to B, and will interfere to enforce the rights of A as against B. And, therefore, it is impossible (strictly speaking) that two persons should have equal equities except in a case in which a court of equity would altogether refuse to lend its assistance to either party as against the other. If the court will interfere to enforce the right of one against the other on any ground whatever, say on the ground of priority of time, how can it be said that the equities of the two are equal; *i. e.,* in other words, how can it be said that the one has no better right to call for the interference of a court of equity than the other? To lay down the rule, therefore, with perfect accuracy, I think it should be stated in some such form as this: 'As between persons having only equitable interests, if their equities are *in all other respects equal,* priority of time gives the better equity; or, *qui prior est tempore potior est jure.'* "

Sugden on Vendors, ch. 19, sec. 32, approves the law as stated in *Rice* v. *Rice, supra.*

Cyc., Vol. 16, p. 139, states the rule to the same effect as follows: "Where conflicting equities are otherwise *equal* in *merit* that which first accrued will be given preference, but this test is the last resorted to and does not prevail when any other equitable ground for preference exists." See, also, 1 Pom. Eq. (3d ed.), sec. 413.

But in addition to this, when the first note fell due and was paid to Mrs. Metzger, she should have cancelled, or in some way so marked, that obligation as to disable it from being restored to circulation and by passing into the hands of an innocent holder become a competitor with the second note of the series representing the deferred payment upon the property originally sold by her, and thus bringing about the situation which must result in loss either to her or to Mrs. Wasserman. It is true that

Mrs. Metzger was the payee in the note, and that she never assigned it to any one, but it is also true that a note may be transferred without written assignment so as to pass an equitable right to the transferee (*Bell* v. *Moon,* 79 Va. 351), and by surrendering the note which was the evidence of the debt and had been paid to her by the maker with nothing upon it to indicate that it had been satisfied, she enabled Wasserman to transfer it by delivery to Morris, and thus became responsible, however innocently, for the first link in the chain of circumstances ending in this controversy. The note was in her possession; the money which it represented was paid to her; it was wholly within her power to have prevented the catastrophe; and as her conduct is responsible for the conditions which have arisen, I think that her equity should be subordinated, though prior in point of time to that of Mrs. Wasserman, who is wholly innocent and without fault in the transaction.

As showing a better equity in Mrs. Wasserman than that claimed by Mrs. Metzger, I rely then first upon the fact that it was the trustee in the deed to secure Mrs. Metzger, who made the sale under circumstances which the court holds were sufficient to transfer the legal title without carrying notice of any infirmity in the transaction to those who purchased at that sale, and that as a result of the act of the trustee the Building Association is a complete purchaser for value without notice and holds the legal title for its protection; that as a result of the conduct of the trustee Mrs. Wasserman acquired an equity, not only without any notice of prior equities, but was lulled to sleep by the act of the trustee who executed the trust and thus satisfied the lien created by it, and from that moment the record gave assurance to Mrs. Wasserman and all the world that there was nothing further to fear from the lien of that deed of trust.

Now the trustee in that deed was the agent, not of Mrs. Was-

serman, but of the grantor and beneficiary in that deed. A trustee in a deed of trust is the agent of both parties; that is, of the grantor and the beneficiary in the trust, said this court in *Rossett* v. *Fisher,* 13 Gratt. at page 498. If any one is to suffer, therefore, by his acts performed in good faith, but the effect of which has been to impose a loss upon one of two innocent persons, each of them holding an equity, surely it should fall upon her whose agent he was and not upon one a stranger to that transaction.

In the second place, I rely upon the fact that Mrs. Metzger surrendered a note, which had been paid and satisfied to her by the maker, constituting one of a series secured by deed of trust, into the possession of the maker without any mark upon it by which she could easily have rendered it impossible for anyone to assert or to transfer any right under it and bring it into competition with the second note representing the deferred payment upon the land originally sold by Mrs. Metzger.

For these reasons, I am of opinion that the equities between Mrs. Metzger and Mrs. Wasserman are not equal, and that Mrs. Wasserman holds the better equity, though junior in point of time to that of Mrs. Metzger.

*Affirmed.*