# Richmond.

## EVANS BROS. & ANOTHER V. ROANOKE SAVINGS BANK.

### NOVEMBER, 18, 1897.

1. CONFLICTING LIENS—*Deed to Secure Negotiable Notes—Entry of Satis-faction by Payee after Transfer—Second Deed—Equal Equities—Legal Title.*—The beneficiary under a second deed of trust on real estate has priority over the *bona fide* holder of negotiatiable notes secured in the first deed, where it appears that the payee of said notes had marked the first deed satisfied as prescribed by sec. 2498 of the Code before the execution of the second deed, and that said beneficiary had no notice that said notes had been transferred, or were still unpaid, or of any fraud in the transaction. The equities of the parties being equal the holder of the legal title prevails.

2. CONFLICTING LIENS—*Successive Deeds of Trust—Prior Equity—Legal Title—Notice.*—Three successive deeds of trust were given by the same grantor on the same piece of real estate to secure different creditors. At the time the third deed was given the whole of the money secured thereby had not been advanced, and shortly thereafter the second deed was fraudently marked satisfied by the payee of the negotiable notes therein secured after he had trans-ferred them. The balance of the money secured by the third deed was advanced after the second deed had been marked satisfied.

Held: The holder of the notes secured by the second deed has priority, as to the amount advanced before the second deed was marked satisfied, because the record gave notice of the second deed, and as to the amount afterwards advanced, because neither party held the legal title, and the holder of the notes secured in the second deed was prior in point of time.

3. SUIT TO ENFORCE DEED OF TRUST—*Remedy Against Fraudulent Grantor and the Apparent Owner of Debt—Personal Decree.*—In a suit to enforce the lien of a deed of trust on real estate in which all necessary parties are before the court, and there is a prayer for general relief, where it appears that the grantor in the deed, and the apparent owner of the debt secured, have fraudulently caused

the deed to be marked satisfied, when in fact the debt had been assigned to the complainant, the latter is entitled to a personal decree against such grantor and apparent owner for whatever sum may appear to be necessary to indemnify him against the loss sustained by reason of the fraud so perpetrated upon him.

Argued at Wytheville.   Decided at Richmond.

Appeal from a decree of the Hustings Court of the city of Roanoke pronounced July 6, 1894, in a suit in chancery, wherein the appellee was the complainant, and the appellants and others were the defendants.

*Reversed in part.*

The record in this case is very incomplete.   Of the deeds hereinafter mentioned only one is copied into the record, and the report of the commissioner in chancery, upon which the decree of the court below was based, is not copied in the record. The statement of the case, therefore, is made from the pleadings, and not from the exhibits filed.

Lizzie Reed was the owner of a lot in the city of Roanoke, extending through the block from Walker street to Rutherford street.   The front on Walker street was 60 feet, running back between parallel lines 100 feet, and the front on Rutherford street was 30 feet, and extended back between parallel lines 100 feet.   No question was raised as to the times at which the several deeds hereinafter mentioned were admitted to record, and consequently these dates are omitted. Lizzie Reed acquired this lot from Capitola A. Myers, the former owner.   By deed bearing date September 17, 1892, Lizzie Reed conveyed the lot fronting on Rutherford street to Cocke & Shields, trustees, in trust to secure to the Old Dominion Building & Loan Association a debt of $1,000.   By deed bearing date October 25, 1892, she conveyed to J. W. Hartwell the entire lot fronting on both Rutherford street and Walker street in trust to secure to Capi-

tola A. Myers the sum of $1,200, evidenced by three negotiable notes, each for the sum of $400, payable to the said Capitola A. Myers, at the Roanoke Savings Bank, at six, twelve, and eighteen months, respectively, after date, with interest from date. This deed constituted the first lien on the Walker street property, and the second lien on the Rutherford street property. On or about December 29, 1892, the said Capitola A. Myers, and her husband, W. D. Myers, endorsed the three notes for $400 each, and had them discounted by the Roanoke Savings Bank. It appears that the Bank discounted these notes solely on the security furnished by the deed of trust last above mentioned. By deed bearing date May 9, 1893, Lizzie Reed conveyed to W. P. Washburn, trustee, by three several deeds, the Walker street property, each deed conveying a lot 20 feet front on Walker street, and running back between parallel lines 100 feet, and each deed securing a loan of $400 to the Covenant Building & Loan Association, of Knoxville, Tenn. These deeds were admitted to record June 26, 1893.

On June 2, 1893, Capitola A. Myers went to the clerk's office of the Hustings Court of the city of Roanoke, where the deed to secure the three notes of $400 each was recorded, and had entered on the margin of the deed book, where the deed was recorded, the following memorandum: "The amount of money secured by this deed of trust having been paid in full, said deed of trust is hereby released as to the property embraced in three deeds of trust given by said Lizzie Reed to secure the Covenant Building & Loan Association, said property fronting 60 feet on Walker street, and running back between parallel lines 100 feet." This memorandum was signed by said Capitola A. Myers, and duly attested by the clerk of the court.

By deed bearing date August 10, 1893, the said Lizzie Reed conveyed to Evans Bros. the lot fronting on Rutherford street. The consideration of this deed was $1,600, of which $600 was paid in cash, and the grantees assumed the payment of the debt

of the Old Dominion Building & Loan Association for $1,000 first herein above mentioned. Of the $600 cash, it appears that $469 was paid before the entry of the marginal release as to this lot, hereinafter mentioned, and $131 was paid afterwards. On September 16, 1893, the said Capitola A. Myers caused the following memorandum to be placed on the margin of the deed book at the page where the deed of trust securing the three notes of $400 each was recorded: "Released as to lot beginning at a point on the north side of Rutherford street 170 feet west of Commonwealth avenue, thence with Rutherford street 30 feet in an easterly direction, thence in a northerly direction 100 feet to a point, thence in a westerly direction 30 feet to a point, thence in a southerly direction 100 feet to the beginning, the whole amount of money having been paid." This memorandum was signed and sealed by said Capitola A. Myers, and duly attested by the clerk of the court.

The bill in this case was filed by the Roanoke Savings Bank, claiming to be the holder for value and without notice of two of the notes for $400 each, secured in the deed of October 25, 1892. The complainant charges that it is the holder in due course of business, without notice, and that it had no knowledge of the releases hereinbefore mentioned until it directed a sale to be made of the property for default in the payment of one of the notes. The bill sets forth all the deeds and the releases hereinbefore mentioned, and charges that the releases were fraudulently made by a party who had no right to make them, and that the complainant has priority over those claiming under the subsequent deeds. The bill also charges that there was a mechanic's lien claimed on the houses on the Walker street property for $73.35. The prayer of the bill, after making necessary parties, is as follows: "May the said two marginal releases executed by C. A. Myers be declared null and void, and may the lien in favor of your orator's notes under the said deed of trust be reinstated and declared as an existing lien on

all the property mentioned therein, prior to all the liens and conveyances above mentioned, except that in favor of the Old Dominion Building & Loan Association, and may the property embraced in said deed of trust be sold under the orders of court to satisfy the said lien of your orator; may all proper accounts be taken, orders made as the nature of this case may require, or to equity seemeth meet, and your orator prays for general relief in the premises; and as in duty bound will ever pray."

The decree of the Hustings Court gave preference to the debt of the Roanoke Savings Bank evidenced by the two notes of $400 each, hereinbefore mentioned, and directed a sale of the property unless the notes were paid within thirty days. . From this decree Evans Bros. and the Covenant Building & Loan Association appealed.

*L. H. Cocke* and *Hansbrough & Hall*, for the appellants.

*Smith & King*, for the appellee.

KEITH, P., delivered the opinion of the court.

This controversy originates in a bill filed by the Roanoke Savings Bank against Evans Bros., the Covenant Building & Loan Association, Lizzie Reed, C. A. Myers, and others.

The facts, as they appear in the record, are as follows: C. A. Myers was the owner of a lot in the city of Roanoke fronting 30 feet on Rutherford street and running back 200 feet to Walker street, with a front on the latter street of 60 feet. Upon the Rutherford street front, running back 100 feet, there was a deed of trust from Lizzie Reed to Cocke and Shields, trustees, to secure the Old Dominion Building & Loan Association the payment of $1,000. This deed was acknowledged and admitted to record October 3, 1892, and constitutes the first lien upon

that portion of the lot fronting on Rutherford street. The next lien was created by a deed of trust from Lizzie Reed to J. W. Hartwell, trustee, to secure C. A. Myers two negotiable notes, each in the sum of $400, dated October 25, 1892, and payable respectively at twelve and eighteen months from date, with interest from date. These two notes had, at the date of the transaction about to be narrated, been indorsed to the Roanoke Savings Bank, which holds them as an innocent purchaser for value. This deed was dated October 25, 1892, and was on the same day acknowledged and admitted to record. It constitutes, therefore, the first lien upon 60 feet of the property fronting upon Walker street, and running back 100 feet, and the second lien upon the 30 feet fronting upon Rutherford street, and running back 100 feet. With these liens upon her property, Lizzie Reed borrowed of the Covenant Building & Loan Association of Knoxville, Tenn., the sum of $1,200, and offered as security therefor a deed of trust upon the property, 60x100 feet, fronting on Walker street. Before paying the money over, however, the Covenant Building & Loan Association had the title investigated, and ascertained the existence of the liens heretofore mentioned. It refused to make the loan, and thereupon Lizzie Reed induced C. A. Myers, the apparent owner of the first lien, securing the two notes of $400 each, which had, as a matter of fact, been indorsed, as we have seen, to the Roanoke Savings Bank, but of which transfer the Covenant Building & Loan Association was ignorant, to enter upon the margin of the deed book in which this incumbrance was recorded that it had been satisfied to her. The effect of this entry, under section 2498 of the Code, was to release the incumbrance referred to. The Covenant Building & Loan Association thus became the first lienor upon so much of the lot as was conveyed to trustees to secure the loan made by it. It is true that the equity of the Roanoke Savings Bank was unaffected. It had acted in good faith; had lent its money after an examina-

tion of the record, which showed that the notes purchased by it were secured by a deed of trust which constituted a first lien upon the property; but, by a fraudulent combination between the original payee in the note and the grantor in the deed of trust, the lien was, without any fault upon the part of the Roanoke Savings Bank, marked "satisfied," and the legal title to the property, which was held by the trustee named in the deed to secure these two notes held by it, and the benefit of which lien had by the assignment of the notes been vested in the Roanoke Savings Bank, was by this fraud defeated and rendered wholly valueless.    The Covenant Building & Loan Association, ignorant of the true situation, with nothing to put it upon inquiry as to the transfer of these notes, dealt with the record as it found it.  Being informed of the existence of this lien, it declined to make the loan until Mrs. Myers, who was the apparent owner of the lien, voluntarily came forward, acknowledged that it had been paid, and recorded the satisfaction of it upon the deed book in accordance with the statute.    The result of it is that the deed to secure the notes held by the Roanoke Savings Bank was by these transactions released, so far as the Covenant Building & Loan Association is concerned; and that association, being an innocent purchaser, relying upon the public record, stands to-day before the court with an equity equal to that of the Roanoke Savings Bank, and with a legal title vested in the trustee for its benefit.

This case is very similar in its facts, and is identical in principle, with that of *Williams* v. *Jackson*, decided by the Supreme Court of the United States, and reported in 107 U. S., at page 478, where Justice Gray, delivering the opinion of the court, uses the following language:

"Williams is admitted to have had no actual knowledge that the notes secured by the first trust deed were held by the plaintiffs, or that they were unpaid.    The knowledge of those facts by Charles T. Davis, through whom Williams made the loan,

does not bind him because, upon the evidence, Charles T. Davis appears not to have been his agent, but the agent of Sweet and wife.

"Williams took every reasonable precaution that could have been expected of a prudent man, before advancing his money to Charles T. Davis for Sweet and wife. He declined to lend his money until after he had been furnished with a conveyancer's abstract of title, showing that the deed of release from the trustees under the first deed of trust, and from the original holder of the notes secured thereby, as well as the second deed of trust to secure the repayment of the money lent Williams, had been recorded, and that the land was not subject to any incumbrance prior to the second deed of trust.

"It was suggested in argument that, as the first deed of trust showed that the notes secured thereby were negotiable, and were not yet payable, and that the land was not intended to be released from this trust until all the notes were paid, Williams was negligent in not making further inquiry into the fact whether they were still unpaid. But of whom should he have made inquiry? The trustees under the first deed, and the original holder of the notes secured thereby, having expressly asserted under their own hands and seals that the notes had been paid, and Sweet and wife having apparently concurred in the assertion by accepting the deed of release, and putting it on record, he certainly was not bound to inquire of any of them as to the truth of that fact; and there was no other person to whom he could apply for information, for he did not know that the notes had ever been negotiated, and he had no reason to suppose that they had not been cancelled and destroyed.

"To charge Williams with constructive notice of the fact that the notes had not been paid, in the absence of any proof of knowledge, fraud, or gross or wilful negligence on his part, would be inconsistent with the purpose of the registry laws, with the settled principles of equity, and with the convenient transaction of business.

"The equity of Williams being at least equal with that of the plaintiffs, the legal title held for Williams must prevail, and he is entitled to priority." See, also, *National Valley Bank* v. *Harman*, 75 Va. 604.

Mrs. Reed desired also to make this property the basis of a credit with Evans Bros., merchants of the city of Roanoke, and they paid to her, or extended credit to her, to the sum of $600, and took a deed of trust to secure it upon the property fronting on Rutherford street. As we have seen, there was a deed of trust upon this front in favor of the Old Dominion Building & Loan Association for $1,000, which constituted the first lien; a second lien to secure the two notes of which the Roanoke Savings Bank was the indorsee; and in this condition of the title Evans Bros. paid to Lizzie Reed, or extended credit to her for, the sum of $469—a part of the sum of $600, now claimed by them. At the time the $469 was paid, the lien in favor of the Roanoke Savings Bank appeared of record in full force and effect. At that point Evans Bros. declined to extend further credit or make further payments until the lien now claimed by the Roanoke Savings Bank should be discharged and released. C. A. Myers then entered of record upon the deed book as in the case of the Covenant Building & Loan Association, the satisfaction and release of the incumbrance of which she was the apparent owner, and thereupon Evans Bros. paid over to Lizzie Reed $131, which, together with the $469, made up the aggregate sum of $600. At the time the $469 was paid, the deed to secure the notes to C. A. Myers, which had been by her transferred to the Roanoke Savings Bank, was in full force and effect. It is not suggested that Evans Bros. had received any assurance that it had been "satisfied," as in point of fact it had not been, but the money was paid by Evans Bros., or credit extended by them to Mrs. Reed, to the extent of $469, with the record showing the liens outstanding, as they have been heretofore stated.

We are of opinion that as to the sum of $469 Evans Bros. cannot be. considered as innocent.purchasers for value, and without notice.

There is room for grave question whether they can be so considered with respect to the $131, under the circumstances of this case; but that point it is not necessary for us to decide.

When C. A. Myers entered "satisfaction" of the deed of trust to secure the two notes for $400, of which, so far as was disclosed by the record, she was the owner, it operated as a release of that incumbrance, but did not have the effect, as in the case of the Covenant Building & Loan Association, of putting the legal title in the trustee in the deed made for the benefit of Evans Bros., because upon this particular piece of property the legal title was outstanding in Cocke & Shields, trustees, to secure the Old Dominion Building & Loan Association, which, as we have seen, constitutes the first lien on the Rutherford street property.   With respect, therefore, to the $131, Evans Bros. were the purchasers of a mere equity, and they may be said to have an equity equal to that of the Roanoke Savings Bank.   If Evans Bros. had acquired the legal title, or, rather, had the legal title, by these transactions, been vested in a trustee for their benefit, they would have an equal equity, and the legal title would have prevailed; but as the case actually stands they are the holders of an equal, but a junior, equity, and must be postponed to the older equity of the Roanoke Savings Bank. See the citation already made from *Williams* v. *Jackson, supra,* and also *Briscoe* v. *Ashby,* 24 Grat. 454, where it is said, quoting from *Chew* v. *Barnet,* 11 Serg. & R. 389: "When it is asserted that a purchaser for valuable consideration takes the title free of every trust or equity of which he has no notice, it is intended of a title perfect on its face, for every purchaser of an imperfect title takes it with all its imperfection on its head.   It is his own fault that he confides in a title which appears defective to his own eyes, and he does so at his peril.   Now, every equitable title is incomplete on its face.   It is, in truth, nothing

more than a title to go into chancery to have the legal estate conveyed, and therefore every purchaser of a mere equity takes it subject to every clog that may lie on it, whether he has had notice or not. But the purchaser of a legal title takes it discharged of every trust or equity which does not appear on the face of the conveyance, and of which he has not had notice, either actual or constructive."

We are of opinion, therefore, that the decree of the Corporation Court of Roanoke is erroneous in so far as it postpones the lien of the Covenant Building & Loan Association to that of the Roanoke Savings Bank, and to that extent it must be reversed, but that there is no error in the decree to the prejudice of the appellants Evans Bros., and it is, as to them, affirmed.

We are also of opinion that C. A. Myers and Lizzie Reed, having perpetrated a fraud upon the Roanoke Savings Bank, are responsible to it for any loss it may have sustained, and that the court, having them now before it, should proceed to do full justice in the premises; and the cause will be remanded to the Corporation Court of Roanoke with directions to decree in favor of the Roanoke Savings Bank against C. A. Myers and Lizzie Reed for whatever sum may appear to be necessary to indemnify it against loss by reason of the fraud perpetrated upon it.

HARRISON and BUCHANAN, JJ. (dissenting).

We concur in the conclusion reached by the court that the Covenant Building & Loan Association was an innocent purchaser for value, unaffected by the fact that the notes held by the Roanoke Savings Bank were outstanding and unpaid at the time the deed securing them was released of record.

We further concur in the view taken that Evans Bros., having paid over to Mrs. Reed $469 under their deed of trust while the prior deed securing the Roanoke Savings Bank stood unreleased, are, to the extent of that $469, subsequent in priority to the lien of said bank.

We are unable to concur in the conclusion reached by a majority of the court that Evans Bros. are subsequent in priority to the Roanoke Savings Bank as to the $131 paid by them to Mrs. Reed. After paying the $469 they declined to make further payments on account of the $600 secured to them until the lien now claimed by the Roanoke Savings Bank was released. C. A. Myers then released of record that incumbrance, of which she was the apparent owner, and thereupon Evans Bros. paid over to Mrs. Reed $131, the balance of the $600 secured to them, after deducting the $469 theretofore paid. Evans Bros. having declined to pay over the $131 until the lien under which the bank claims was released, we are of opinion that to the extent of the $131, they were purchasers for value, without notice, and were unaffected by the fact that the notes held by the bank were not paid.

The question is not one of balancing equities between the parties, nor is it, in our view, material that the legal title to the land was outstanding in the trustee in a deed of trust prior to that released. The necessary effect of the statute was, when the deed of trust securing the notes held by the bank was released, that the title to the land was clear so far as that incumbrance was concerned, and *bona fide* rights therein subsequently acquired could no longer be affected thereby.

The object of registry acts is to enable any person about to deal with reference to any parcel of land to discover, or find the means of discovering, every existing and outstanding estate, title, interest in, or incumbrance upon the lands which could affect the rights of a *bona fide* purchaser. 2 Pom. Eq. Jur. sec. 649. And when such a purchaser has gone to the record, and seen that a recorded incumbrance upon the land has been released in the manner prescribed by statute, and, upon the faith of that release, has made his purchase, and paid the consideration, we are of opinion that he takes the land free from that incumbrance, without regard to the question whether the estate which he acquires is legal or equitable.

Under the construction placed upon sec. 2498 of the Code by the majority of the court, one could not deal with an equitable estate with incumbrances upon it, however careful he might be to see that those incumbrances were released in the manner prescribed by law. The record which discloses the lien or incumbrance binds him, but the same record, which also shows the same lien or incumbrance to be regularly released, does not protect him.

*Reversed in part.*