Syllabus.

## Richmond.

## MURPHY'S HOTEL COMPANY, INC., AND OTHERS V. HERNDON'S ADMINISTRATOR AND OTHERS.

### March 15, 1917.

1. PRESUMPTIONS AND BURDEN OF PROOF—*Testimony Peculiarly Within Knowledge of the Party to the Suit.*—When a defendant who can, by his own testimony, throw light upon matters at issue necessary to his defense and peculiarly within his own knowledge if the facts exist, fails to go upon the witness stand, the presumption is raised and will be given effect to, that the facts do not exist.

2. PRESUMPTIONS AND BURDEN OF PROOF—*Testimony Peculiarly Within Knowledge of the Party to the Suit—Parties to Deed of Trust.*—Where the debtor and grantor in a deed of trust testified as to the circumstances under which the deed and the notes which it evidenced were given, no presumption arises from the failure of the beneficiaries in the deed to testify, where it does not appear that the facts in regard to the execution and the delivery of the notes in question were peculiarly within their knowledge, there being no allegation in the pleadings of any collusion between the debtor and the beneficiaries. Although the beneficiaries had knowledge of the consideration furnished by them, this was not peculiarly within their knowledge. It was equally within the knowledge of their debtor, who admitted the validity of the consideration.

3. MORTGAGES AND DEEDS OF TRUST—*Consideration.*—Under section 24 (Code 1904, section 2841-a) of the negotiable instruments law of Virginia, a deed of trust and notes secured by it are *prima facie* evidence of a valuable consideration, in the absence of affirmative evidence of lack of consideration.

4. WITNESSES — *Impeachment—Consideration.*—Contradictory statements of the grantor of a deed of trust as to the consideration of the deed supply no affirmative proof tending to show that such consideration was lacking.

5. FRAUDULENT CONVEYANCES—*Presumption.*—The circumstance that counsel for one of the deed of trust creditors was also counsel for the debtor is no evidence of fraudulent collusion between the debtor and the deed of trust creditors, especially in the absence of any charge of fraud in the pleadings.

64

6. Mortgages and Deeds of Trust—*Laches.*—Where a remainder-man gives a deed of trust enforceable upon the death of the life tenant no presumption arises against the validity of the deed of trust from a failure of the creditors to assert their debts before the death of the life tenant.

7. Mortgages and Deeds of Trust—*Delivery of Notes.*—Upon suit to enforce a deed of trust the delivery or nondelivery of the notes secured by it is immaterial. The deed of trust is in itself sufficient evidence of the existence of the debts, in the absence of any proof of their payment subsequent to its delivery.

8. Mortgages and Deeds of Trust—*Decree Directing Release of Deed—Pleading.*—A decree of court directing the release of a deed of trust to secure notes payable to the holder or holders thereof could not be valid, unless based upon some pleadings putting in issue before the court whether there was or were any holder or holders of such notes. The existence of an issue in a cause is essential to the exercise of the jurisdiction of the court. There must be some proceeding by which the issue between the parties in interest is presented to the court for decision, and, moreover, all such parties must be given an opportunity to be heard thereon. An* *ex parte* report of a special commissioner is not a pleading tendering such an issue.

9. Mortgages and Deeds of Trust—*Decree Directing Release of Deed—Parties.*—Where the holders of notes secured by a deed of trust were not made parties to the suit, or given notice thereof, a decree directing a release of the deed is void.

10. Mortgages and Deeds of Trust—*Decree of Release—Notice of Invalidity.*—A void decree of court directed the trustee in a deed of trust to release the deed. The trustee's deed of release showed on its face that the trustee did not act of his own volition, but under a decree of court, which decree was referred to. The release deed further referred to the report of an *ex parte* special commissioner for the facts on which the decree was based. The release deed itself, of record, therefore, put every subsequent purchaser for value and creditor upon notice of what an examination of the papers and proceedings in the suits would have disclosed, namely, that the decree was void and the release deed a nullity.

Appeal from a decree of the Chancery Court of the city of Richmond, in a chancery suit wherein the appellees filed their petition. Decree for petitioners. Respondents appeal.

*Affirmed.*

· The opinion states the case.

*A. B. Dickinson,* for the appellants.

*Wm. P. De Saussure,* for the appellees.

SIMS, J., delivered the opinion of the court.

This suit involves a controversy between appellants, judgment lien creditors of Mrs. Mary Lee Benet (formerly Mrs. Bitting) and appellees, who claim to be lien creditors of the same debtor by virtue of a deed of trust prior in date and time of recordation to the obtaining and docketing of the judgments of appellants.

Appellants claim that the debts of the appellees never in fact existed for lack of consideration, that the notes evidencing such indebtedness were never negotiated by the maker, Mrs. Benet—that is to say, were never delivered to appellees or to any one for them so as to be beyond the control of Mrs. Benet; and that the deed of trust was released by a release deed valid as to appellants, so that the lien of their judgments attached to and binds the property conveyed by the trust deed giving the latter a prior lien thereon.

The property conveyed by the deed of trust was the interest of Mrs. Benet in the Ford trust estate. The latter consisted of real estate and personal property. The interest of Mrs. Benet was not expected to vest and did not become vested until the death of her mother, Mrs. Ford. The latter did not die until the fall of 1908. The character of this interest in property and of the four original chancery suits successively instituted in the court below, involving said Ford trust estate, appears in a general way from the case of *Brown* v. *S. H. Ford et als,* 120 Va. 233, 91 S. E. 145.

The deed of trust in question under which appellees claim, was duly executed June 11, 1898, and duly recorded on June 16, 1898. Edgar Allan, Jr., was the trustee named therein. The name of only one of appellees appears in this deed of trust, viz., Henry McBride. The debt asserted by him is secured by the deed of trust and is stated therein to be evidenced by the note of Mrs. Benet (then Mrs. Bitting), dated in January, 1896, payable 12 months after date to him or his order. The debts asserted by the other appellants, Williams, Sharp and Herndon's administrator, secured thereby, are stated in the deed of trust to be evidenced by two notes of Mrs. Benet (then Mrs. Bitting), one note dated June 10, 1898, and the other April 10, 1897, both payable to her order and endorsed by her.

The deed of trust provided that at any time after the title to said interest in said property should by reason of the death of Mrs. Ford become vested in fee simple in Mrs. Bitting (later Mrs. Benet) the trustee should, upon request of the beneficiaries thereunder, or the holder or holders of any notes thereby secured, sell, etc. The deed of trust was placed on record by Edgar Allan, Jr., trustee. The notes in question were on June 11, 1898, the same day the deed of trust was executed, placed by the said maker of them in the hands of Edgar Allan, Sr., who was then her attorney at law, accompanied by a statement in writing, designated in the record as paper "X," which was signed by Mrs. Bitting (later Mrs. Benet) and Edgar Allan, Sr. This paper in effect stated that Mrs. Bitting left in the hands of Edgar Allan, Sr., the notes above mentioned. This paper merely lists the note in favor of Henry McBride by stating that it was the note of Mrs. Bitting "to Henry McBride for $400.00." It describes one of the other notes by stating that it was "Her note for $825.00 endorsed to Edgar Allan as attorney to be applied to the payment of the following amounts: Solon T. Williams $100.00, Thomas Sharp $500.00

and Mrs. John L. Hopkins $150.00" (the latter not involved in this suit), "the excess to be applied to payment of interest on the note of Thomas Sharp." It describes the remaining note in question as, "Her note of $300.00 endorsed by her to Edgar Allan, attorney, for the payment of her indebtedness to J. F. Herndon." These notes and the paper "X" remained in the possession of Edgar Allen, Sr., until his death in October, 1904, and were found among his papers after his death.

Mrs. Ford died in the fall of 1908, as above stated. In March, 1909, Edgar Allan, Jr., and his mother, as executor and executrix of Edgar Allan, Sr., deceased, and Edgar Allan, Jr., trustee (also as trustee in other deeds of trust not necessary to be mentioned), by petition, filed in the two of said original chancery suits first instituted, set up the fact that said notes and paper "X" were found among the papers of their testator; alleged that the debts evidenced thereby were valid and subsisting debts, had never been paid by Mrs. Benet, and asking that their payment should be enforced against said interest of Mrs. Benet in said property; that an account of debts against such interest in such property be taken, with their liens and priorities; and that all of such debts be enforced and paid. None of appellees were made parties to this petition.

Accordingly decree was entered directing such accounts and Commissioner Jackson Guy filed his master commissioner's report dated June 25, 1909, in which he reported in favor of Henry McBride his said debt as evidenced by said note payable to him or order and secured by said deed of trust. He alike reported in favor of "Allan, Edgar's executors," the debts evidenced by the two other notes in question above mentioned. With respect to the $825.00 note, he reported that the paper "X" shows "that it was given by Mary Lee Benet to Edgar Allan as attorney, to collect and apply its proceeds to Solon T. Williams $100.00,

to Thos. Sharp $500.00, and Mrs. John L. Hopkins $150.00, the excess to be applied to the interest on the note of Thos. Sharp. Mrs. Benet states that these parties live in Seattle. The note itself is in the possession of the executors of Edgar Allan, deceased, but they make no claim to it. With respect to the $300.00 note he reported that it was in the possession of same executors, but that the paper "X" shows "that it belongs to John F. Herndon, who, I understand, was the first husband of Mary Lee Benet, and is dead."

There was no exception to this report. However, it was never confirmed by any decree of court, but remained filed among the papers of the cause unacted upon by the court.

In this condition of the record, on December 22, 1910, certain special commissioners, who had been appointed by prior decree in said four original chancery causes, filed their report in such causes. These commissioners had been appointed to make sale of certain real estate involved in such suits composing a part of the said property, the interest of Mrs. Benet in which was conveyed by said deed of trust, and they were appointed for no other purpose. However, they reported that they had sold a certain piece of real estate; that the purchaser had had the title examined and found said deed of trust recorded as a lien thereon. These special commissioners further say in such report, "upon knowledge and belief" the following, in effect:

1. That the McBride note "was never negotiated;" that no consideration therefor ever existed; that the special commissioners had no knowledge whatever as to McBride and could not say whether he was living or dead, but that such note was never delivered to him, being then in the pos-

session of Edgar Allan, Jr., trustee in said deed of trust, who laid no claim to it.

2. That the two other notes in question were never negotiated or discounted; that no consideration therefor ever existed; that it was true that a paper was found among the papers of the late Edgar Allan setting forth the manner in which the proceeds of such notes were to be applied, but that the latter was the attorney for Mrs. Benet and such notes were in the possession of Edgar Allan, Jr., trustee, at the date of such special commissioners' report; and that he laid no claim to them. They added with respect to the Herndon note, that they were informed that a loan was to have been made to Mrs. Benet by Herndon, and the note was executed for that purpose, but that the making of the loan was never consummated. The commissioners then say that they feel it their duty to ask for the removal of the lien of said deed of trust and they "suggest to the court that Edgar Allan, Jr., trustee, may be made a party defendant to these causes, and may by an order entered herein be authorized and directed to execute and record a proper deed releasing the said deed of trust to him as trustee," as to the notes evidencing the debts afterwards asserted by appellees, and that he attach to and record with the release deed all of such notes.

No pleading was before or at that time filed putting in issue the facts stated in said special commissioners' report, or making Edgar Allan, Jr., trustee, a party defendant "to these causes," or in any cause, upon such issue. Nor was the executor or executrix of Edgar Allan, Sr., impleaded upon such issue, nor McBride, nor any of the other appellees; nor did any of these parties appear in this cause at or before this time and make or respond to any such issue, or have any notice of such decree being asked for. Nevertheless, on the same day on which said special commissioners' report was filed, to-wit, on December 22, 1910, decree was

entered in said four, chancery causes directing Edgar Allan, Jr., trustee, to execute and record a good and sufficient deed releasing said trust deed as to the notes therein described, evidencing the debts of appellees.

Accordingly, on January 3, 1911, Edgar Allan, Jr., trustee, executed and recorded a release deed to Mrs. Benet of said deed of trust. In this release deed he referred to said special commissioners' report and to what it "set forth" in regard to said notes never having been negotiated, and that they were "still in the possession of Edgar Allan, Jr., trustee, who made no claim to same," and to said decree of December 22, 1910, as his authority for releasing such trust deed.

The suit before us arose upon petitions and amended petition of appellants filed in April, 1912, in the four original chancery suits above referred to, and the issues made by answers of appellants to such petitions.

Mrs. Benet, by her answers to such petitions, admitted the validity of appellees' debts.

Upon these issues, Mrs. Benet testified in support of appellees' debts and stated that she had always recognized their validity and wanted their lien enforced; that all of petitioners except Herndon's administrator were, at the times the debts to them were contracted, and have been since, citizens and residents of Seattle, in the State of Washington; that her indebtedness to McBride was for attorney's fees for representing her in suit for divorce against her former husband, C. C. Bitting; that her indebtedness to Williams was for professional services to her; and that her indebtedness to Sharp was for board and maintenance of herself and little child; that the debt to Herndon was for money loaned her by him; and that while Edgar Allan, Sr., was her attorney at the time said notes and paper "X" were delivered to him by her, such delivery to him was made to be held by him as attorney for appellees.

None of appellees except Herndon's administrator testified in the case.

Mr. R. H. Talley, one of the special commissioners aforesaid and also one of the appellants, a judgment creditor of Mrs. Benet, testified that the latter had always contended that the debts of appellees were not valid and that they should not have been reported by Commissioner Guy. Mr. Talley is corroborated in his testimony by Mr. Edgar Allan, Jr., and Mr. Stewart H. Ford.

Mr. A. J. Bradley, administrator of Herndon, testified that he was present at the interview between Mr. Talley and Mrs. Benet and that she stated to Mr. Talley that the debts of McBride and Sharp were incurred for full consideration; that they were sacred, and that she wanted them paid.

There was another master commissioner's report—that of Commissioner Shield—filed August 13, 1914, which reported in favor of the validity of the debts of appellees; that the decree of December 22, 1910, was void; that the said release deed executed thereunder was of no effect; and that the debts of appellees had priority of lien over the judgment of appellants. There were exceptions to this report by appellants, and on August 2, 1915, the decree complained of was entered, which, in effect, held as follows:

1. That the execution and recordation of said deed of trust securing the payment of the notes involved in the controversy in this suit, and the delivery of such notes by Mrs. Benet to Edgar Allan, Sr., under the direction contained in the paper "X" with Commissioner Guy's report, taken in connection with the subsequent facts and circumstances shown in the record, constituted a valid lien on the property conveyed by said deed of trust and an irrevocable appropriation of said notes and the security given therefor to the payment of the debts of appellees;

2. That appellees were necessary parties to any proceeding seeking to affect the validity or priority of such lien;

3. That as appellees were not parties to the proceeding in which the decree of September 22, 1910, was entered, such decree was void and the release deed a nullity.

The petition of appellants on appeal from such decree contains four assignments of error, which are as follows:

"First. It appears from the record that upon filing the petitions of Sharp, McBride and others, in April, 1912, the validity of the indebtedness evidenced by said notes, and of the delivery of said notes, and the *bona fides* of the transaction, were directly put in issue by the answers of said petitions. Although this was done, it appears from the record that neither of the petitioners ever appeared before the commissioner at any time or in any manner in these causes to testify or offer any evidence other than that of Mary Lee Benet herself in support thereof. It further appeared that all of said petitions were presented by the counsel of record for Mary Lee Benet herself in the combined four causes. It further appeared that for years prior to the filing of said petitions Mary Lee Benet had persistently denied the validity of the notes, the validity of the delivery thereof and the validity of the lien by which they were secured. Your petitioners insisted before the commissioner and before the Chancery Court of the city of Richmond that under these circumstances the silence of Sharp, McBride and others raised the presumption which should be given effect to that the indebtedness alleged in the petitions of Sharp, McBride and others did not exist; that it was solely in their power to prove the existence of the indebtedness and the consideration therefor; that said notes had been delivered to Edgar Allan, Sr., for their benefit, if the fact existed, could have been proven by them; and that their continued and persistent silence for fourteen years, although the validity of the transaction had been

directly put in issue; that all of these facts and circumstances raised such a presumption against the petitioners that could not be overcome by the unsupported testimony of Mary Lee Benet, who had for years thereto denied the validity of the whole transaction. *Copperthite* v. *Loudoun Nat'l Bank*, 111 Va. 70, 68 S. E. 392; *Aragon Coffee Co.* v. *Rogers*, 105 Va. 51, 52 S. E. 843, 8 Ann. Cas. 623; *Kirby* v. *Talmadge*, 160 U. S. 383, 16 Sup. Ct. 349, 40 L. Ed. 463.

"In addition to the burden of proof resting upon Sharp, McBride and others, and in addition to the presumption raised by their failure to offer one word in support of the contention set up in their petitions, there is the suspicious fact that their petitions were presented to the chancery court by counsel for Mary Lee Benet, who herself offered the sole testimony in support of the contention alleged by Sharp, McBride and others, though she had for years previous thereto denied it, and we submit that under these circumstances there should be no holding that this discredited testimony of Mary Lee Benet should be a sufficient basis for a decree re-establishing the notes and deeds of trust when the chancery court by its decree of December 22, 1910, had distinctly declared that there had been no delivery of the notes, and, consequently, that the same constituted no lien upon her interest in the Ford trust estate.

"Second. Your petitoners further respectfully submit that under the circumstances developed in these causes there had been no sufficient delivery of the notes to give Sharp, McBride and others any vested rights in the premises.

"It appears that the notes had been executed by Mary Lee Benet and held by her in her possession until June 11, 1898; that on that day she delivered the notes to her own counsel, Edgar Allan, Sr.; that these notes were to be held by him until such time as the same could be collected, either through a sale of the property under the deed of trust, or by payment through decree of the court; that after such a

collection he was, under the provisions of the paper marked 'X' and hereinbefore referred to, to apply the proceeds as therein directed. The chancery court held that these facts constituted an equitable assignment or an irrevocable appropriation, which amounts to an equitable assignment, by Mary Lee Benet to Sharp, McBride and others. This conclusion of the chancery court, we submit, is contrary to the uniform current of authority and should not be sustained.

"Third. It will be observed that there was no authority in the paper marked 'X', above referred to, nor otherwise shown to exist in the record, empowering Sharp, McBride and others, or either of them, to collect the amount of the notes involved in this procedure. Edgar Allan, Sr., the attorney of Mary Lee Benet, was alone authorized to collect the proceeds of the notes when collected. Whether or not Edgar Allan, Sr., carried out those directions was a matter purely between him and his client, Mary Lee Benet. Sharp, McBride and others had no notice of the execution of the notes or of their possession by Edgar Allan, Sr. As between the trustee and Edgar Allan, Sr., Edgar Allan, Sr., stood in the position of beneficiary. Sharp, McBride and others then had no such interest as rendered it necessary to make them parties to the proceeding for the release of the deed of trust. Edgar Allan, Jr., both in his capacity as trustee and as executor of his father's estate, was before the court, and under the circumstances it is submitted that they were the only necessary parties to that proceeding, and therefore the decree of December 22, 1910, was valid and binding and cannot now be assailed in this proceeding. See *Stout* v. *Stout*, 104 Va. 480, 51 S. E. 833.

"Fourth. But even if it were conceded that there was a delivery of the notes by handing them to Edgar Allan, Sr., the attorney of the drawer, and conceding further that the paper marked 'X' constituted an equitable assignment, giving to Sharp, McBride and others a vested right in the

premises, and even if it were conceded that the decree of December 22, 1910, were a nullity, yet the fact is that Edgar Allan, Jr., the trustee, did cancel the notes and executed a deed of release in proper form and had the same admitted to record. Whether the decree of December 22, 1910, constituted a proper authority to the trustee to execute the deed of release or not, the fact remains that he did execute it. The effect of this deed of release was to convey to Mary Lee Benet the title which had been conveyed to him by the deed of trust of June 11, 1898. It was an actual conveyance. *Evans* v. *Roanoke Savings Bank,* 95 Va. 294, 28 S. E. 323, and *Williams* v. *Jackson,* 107 U. S. 478, 2 Sup. Ct. 814, 27 L. Ed. 529.

"The effect, then, of the execution of this deed of release by Edgar Allan, Jr., trustee, was to reconvey the property to Mrs. Benet. Upon its reconveyance your petitioners immediately acquired a vested legal lien upon the property."

These assignments of error will be considered in their order.

First. With respect to the first assignment of error.

This assignment of error raises the following questions for our decision:

a. Is this a case in which the rule laid down in the cases of *Copperthite* v. *Loudoun Nat'l Bank, Aragon Coffee Co.* v. *Rogers,* and *Kirby* v. *Talmadge* (cited in the first assignment of error), is applicable?

The rule referred to is stated in the case of *Copperthite* v. *Loudoun Nat'l Bank, supra,* as follows:

"When a defendant can, by his own testimony, throw light upon matters at issue necessary to his own defense and peculiarly within his own knowledge if the facts exist, and fails to go upon the witness stand, the presumption is raised and will be given effect to, that the facts do not exist."

In the case at bar it does not appear that the facts in regard to the execution and delivery of the notes in question were peculiarly within the knowledge—or indeed, at all within the knowledge—of the appellees who failed to testify, or any of them. The sole matter within their knowledge was the consideration furnished by them, respectfully, for their debts. This was not peculiarly within their knowledge. It was equally within the knowledge of their debtor, Mrs. Benet, who by her answers in the cause and by her testimony admitted the validity of the consideration. There is no allegation in the pleadings of any collusion between appellees, or any of them, and Mrs. Benet to perpetrate a fraud. Further, the deed of trust and the notes (sec. 24 of the negotiable instrument statute of Virginia) were *prima facie* evidence of valuable consideration. No affirmative evidence whatever was introduced by appellants of any lack of such consideration. If the utmost effect were given to the conflict in the testimony with respect to Mrs. Benet having made prior statements in contradiction of her testimony, such contradiction would not have supplied appellants with any affirmative proof tending to show that such consideration was lacking. The *prima facie* case of valuable consideration made by the deed of trust and the notes themselves, is sufficient to support the decree complained of on the question of consideration.

This, therefore, is not a case in which the rule above referred to is applicable.

b. Was the circumstance that counsel for one of appellees in filing petition of latter, was also counsel for Mrs. Benet, the debtor, evidence of fraudulent collusion between appellees and Mrs. Benet?

The position taken in this assignment of error that *all* of the petitions of appellees were. presented by counsel for Mrs. Benet, is not sustained by the record. Only the petition of Herndon's administrator was presented by the same

attorney who was counsel for Mrs. Benet. However, this fact tends to support, rather than contradict, Mrs. Benet's testimony to the effect that she had always recognized the validity of the debts of appellees and their lien under said deed of trust and wanted the latter enforced. Certainly this in itself could not be considered as any proof of fraudulent collusion between Mrs. Benet and appellees, and especially is this true in the absence of any charge of fraud in the pleadings.

c. In reference to the delay of appellees referred to, it is deemed sufficient to say:

Ten years of the delay by appellees in asserting their debts is explained by the fact that they could not assert them until Mrs. Ford's death in 1908. The record shows that they have been guilty of no unreasonable delay since that time.

We, therefore, cannot sustain the first assignment of error.

Second. With respect to the second assignment of error.

Counsel for appellants cite a number of authorities bearing upon their position taken in this assignment of error, to the effect that there was no such delivery of the notes in question to or for the benefit of appellees as to negotiate them and set them afloat as existing debts.

In the view we take of this case, however, it is not necessary for us to discuss these authorities or to consider such question. The action of appellees was not upon the notes, but to enforce the deed of trust. The deed of trust was unquestionably delivered by Mrs. Benet to the trustee and by him duly recorded before the lien of any of the judgments of appellants came into existence. The deed of trust secured the payment of the debts in question. It is true the trust deed states that such debts are evidenced by the notes as described therein. But upon suit to enforce the deed of trust, the delivery or non-delivery of the notes becomes an

immaterial question. The deed of trust is in itself sufficient evidence of the existence of the debts, in the absence of any proof of their payment subsequently to its delivery.

As said by this court in the case of *Eacho* v. *Cosby*, 26 Gratt. (67 Va.) 112, Staples, J., delivering the opinion of the court: "But the question of delivery is only important where the action is upon the note, or it is sought to charge one who is only liable by reason of being a party to the instrument. When a debt exists independent of the note, the action is often upon the original consideration. * * * If in such a case the debtor executes a deed of trust or mortgage to secure the deed, and in the deed refers to the note, it will scarcely be maintained that the deed is a nullity because there is a failure fraudulently or negligently to execute and deliver the note. The true inquiry is, does the debt exist? Is it due? When this is satisfactorily ascertained, the form of the security is important so far, only, as it affects the remedy. It is not essential that there shall be any bond or note whatever. The deed of trust or mortgage will be valid without any other evidence of the debt than its recitals."

Therefore, we cannot sustain the second assignment of error.

Third. With respect to the third assignment of error.

It is true that the deed of trust of record gave no notice that any of appellees was a beneficiary thereunder, except McBride. It did give express notice that he was such beneficiary at the time of the execution of the deed of trust to the extent of the note payable to him or order. The other two notes in question were, as described in the deed of trust, in effect payable to the holder or holders thereof, that is, to bearer. The deed of trust, as it appeared of record, did itself, therefore, furnish *prima facie* evidence, and hence it gave notice, that it secured the payment of

valid subsisting debts to the amount of those in question, in favor of the holder or holders of the notes. Hence, no decree of court directing the release of such deed of trust could be valid unless based upon some pleadings putting in issue before the court whether there was or were any holder or holders of such notes. The existence of an issue in a cause is essential to the exercise of the jurisdiction of the court. There must be some proceeding by which the issue between the parties in interest is presented to the court for decision, and, moreover, all such parties must be given an opportunity to be heard thereon. *Linkous* v. *Stevens,* 116 Va. 905-911, 83 S. E. 417; Black on Judgments, pp. 907-8; *Graham* v. *LaCrosse Ry. Co.,* 3 Wall. 704, 709-10, 18 L. Ed. 247. Aside from the question as to the necessary parties to such a proceeding, appellants are confronted with the fatal defect in their case that there was no such proceeding at all. There was no pleading tendering such issue. The special commissioners' report was merely *ex parte.* It could in no sense be regarded as a proper pleading to put the necessary question of fact in issue. The decree was therefore void.

Further:

The special commissioners' report referred to paper "X," It was filed in suits, the papers and proceedings of which gave information of the contents of paper "X" and information of what the report of Commissioner Guy showed as to who were the real beneficiaries of the debts in question. Moreover, such papers and proceedings showed the allegations of the petition of the executor and executrix of Edgar Allan, Sr., that such debts were subsisting debts and that the lien of such deed of trust should be enforced. Upon such disclosure of facts shown by the record of such suits, clearly appellants were all necessary parties to any proceeding seeking to obtain a decree of court therein affecting

66

the release of the lien of the deed of trust. *Moorman* v. *Arthur,* 90 Va. 455, 473, 18 S. E. 869; *Simon* v. *Ellison,* 90 Va. 157-8, 17 S. E. 836; 1 Barton's Ch. Pr., p. 232. None of them having been made such parties or having any notice of such decree before it was entered, the decree was void for this reason also.

Hence, this assignment of error cannot be sustained.

Fourth. With respect to this assignment of error. If the trustee had released the deed of trust in question by a deed of release, with nothing on the face of it to put the appellants upon inquiry as to his lack of authority to do so, the position taken in this assignment of error might be tenable, and the remedy of appellees might be solely by proceeding against the trustee for breach of trust.

As to the cases cited by counsel for appellants on this point: The case of *Evans* v. *Roanoke Savings Bank,* 95 Va. 294, 28 S. E. 323, involved a release on the margin of the deed book regular in form and in compliance with the statute, as it then existed, on the subject; and that of *Williams* v. *Jackson,* 107 U. S. 478, 2 Sup. Ct. 814, 27 L. Ed. 529, involved a release deed regular in its form, in which the payee of the note evidencing the debt secured by the deed of trust, united with the trustee in the deed of release.

In the case at bar the release deed was not regular in form; it shows on its face that the trustee did not act of his own volition, but under decree of court, which decree is referred to. The release deed further refers to the *ex parte* special commissioners' report aforesaid for the facts on which such decree was based. The release deed itself, of record, therefore, put every subsequent purchaser for value and creditor upon notice of what an examination of the papers and proceedings in said suits would have disclosed, namely, that the decree of December 22, 1910, was void, for the reasons stated in the discussion above of the third

assignment of error, and that the release deed in question was a nullity. Therefore, the equities of appellants and appellees are not equal; the equities of the latter are superior to those of the former.

Hence, this assignment of error cannot be sustained.

For the foregoing reasons, we find no error in the decree complained of and it will be affirmed.

*Affirmed.*